Sneed, J.,
delivered tbe opinion of the court:
The decree of the chancellor in this case must he affirmed. The original bill was filed for a settlement of the partnership account between George Brooks and I. Y. *761 Gibson, wbo, as partners under the style of I. Y. Gibson & Co., had been operating a sawmill from 24th July, 1854, to 1st January, 1857, when Gibson bought out the interest of Brooks in the property and business of the firm.
The final account taken in the case finds a large balance in favor of Brooks. In regard to the indebtedness thus ascertained there is not now any serious controversy. The main question controverted upon this appeal arises upon a supplemental attachment bill filed by Brooks October 15, 1860, which assails certain conveyances of real property made by Gibson, by which said property was settled upon his wife and her children. This settlement was made by Gibson after the creation of the debt to Brooks, and it is admitted that they were voluntary. The settlement being voluntary, under the circumstances is presumed to have been fraudulent, and the presumption must stand until rebutted by proof that the donor had at the time ample assets to discharge his debts. This proof we hold the defendants have failed to adduce.
The date of the conveyance by Greenlaw, from whom Gibson bought the real estate, is the date of the settlement upon the wife of Gibson, to wdiom Greenlaw made the deed. At that time, we think, it is clear that Gibson was insolvent. He admits in his answer an indebtedness then of about $3,000, which, with Brooks debt of $5,000, made $8,000, besides divers other debts afterwards paid by Con-nell, who, in 1859, bought the mill at- eight or nine thousand dollars. The debts due from Connell to Gibson, on account of the purchase of the mill, constitute the chief item of assets claimed by Gibson, but it is shown by Con-nell that nearly the entire price of the mill property was absorbed in the payment of Gibson’s debts by Connell. The records in other causes in which these conveyances were held to be fraudulent and void are exhibited in evidence. From these decrees there was no appeal, but they prove nothing in this case, as this complainant was not a *762 party thereto. The testimony used in those causes was, however, used by consent in this cause, and while there are some general asseverations by the witnesses as to Gibson’s supposed solvency, yet the requirements of the law are not satisfied by any proof of an absolute ability at the time of the deeds on the part of Gibson to pay his debts. Indeed, the main witness, "Mynott, testifies that he knew nothing of Gibson’s liabilities after 1st January, 1858, when the first deed was made. Before that time he had been reported solvent, and had been accepted as one of Mynott’s sureties as deputy sheriff on a bond of fifty thousand dollars. "We are satisfied upon the whole proof that Gibson was indebted at the time of these voluntary settlements in an amount largely beyond his ability to pay, and that the deeds assailed were fraudulent and void. After the death of Gibson and wife, who, with their infant child, were the defendants to the original bill, a bill of review was filed to bring the administrator and the two children of Gibson before the court. After this bill of review was filed, a motion to discontinue was entered on behalf of the new parties, which, we think, was properly overruled. It is insisted that the decree by which the chancellor declared the deed of settlement void, and subjected the property to the payment of complainant’s debt, must now be reversed because there was no answer by the guardian ad litem for the minor heirs of Gibson, and no pro confesso as to* the administrator’, who, being before the court, had failed to answer.
We hold tire merits of this controversy to* be clearly with the complainant, and could not reverse the decree upon these grounds, even if there were nothing else in the case. But all the material interests of these minors were represented and defended by the answer of their ancestors — the mother and father — and a guardian ad litem had accepted the trust, and was actively looking after their interests throughout the proceeding. The formal answer of a guard *763 ian ad litem could have added no strength, whatever to tbeir defense, as already asserted by the answers of their mother and father, and the estate itself was also duly represented by exceptions to the report of the master, and in every other necessary matter by the counsel for it, who was one of the original counsel for Gibson, and also the guardian ad litem for the infant heirs. In such a case'a pro confesso against the administrator, though more formal and proper, would not be essential, and the want of it could not be held fatal where the merits. of the litigation have been so clearly attained by the decree. No possible injury could have resulted to the defendants from these irregularities under the facts of the case.
In any aspect of the cause we are satisfied with the result, and affirm the decree.