## CLAUDE CLARK v. W. R. SIMPSON.

Middle Section. August 29, 1925.

Certiorari denied by Supreme Court December 12, 1925.

1. **Trover and conversion. Measure of damages as to converted property which has a standard market value.**
   In ordinary cases of conversion the measure of damages is the market value at the time of conversion.

2. **Trover and conversion. Measure of damages where property coverted is subject to fluctuations in value.**
   Where property converted is subject to fluctuations in value the measure of damages is the highest value between time of conversion and a reasonable time to replace it on the market.

3. **Trover and conversion. Cotton held to come under New York rule of measure of damages.**
   Held where the price of cotton is uncertain and constantly fluctuating, that in determining the measure of damages for conversion, the same rule should be applied as to shares of stock or any other thing which is subject to fluctuation in value.

4. **Landlord and tenant. Landlord's lien for rent, held merged into absolute title by agreement of parties.**
   Under the evidence held that tenant relinquished all his title in cotton to the landlord for credit on his debt thereby giving landlord absolute title to the cotton.

Appeal from Chancery Court, Giles County; Hon. Thos. B. Lytle, Chancellor.

Affirmed.

Jones and Wagstaff, of Pulaski, for appellant.

Eslick and Eslick, of Pulaski, for appellee.

DeWITT, J. The defendant W. R. Simpson appeals from a decree of the chancery court against him in favor of Claude Clark for $386.78, as the value of five bales of cotton alleged to have been converted by him on August 20, 1921, with interest from said date, less the sum of $32.50 allowed him as ginning fees. The chancellor found from the evidence that the appellee Claude Clark was the owner of said five bales of cotton, that the appellant never had

title thereto and was without authority to sell the same in May, 1921, when they were sold by him; that appellee demanded said cotton from the appellant on or about August 20, 1921; that the appellee was entitled to recover the value of the cotton as of that date. While the appellee's title to the cotton is denied, the principal assignment of error is that the court erred in decreeing that the appellee was entitled to a recovery of the value of the cotton as of August 20, 1921. It is not disputed that in May, 1921, when appellant sold the cotton, the value thereof was considerably less than what its value would have been on August 20, 1921, the date of the demand for the cotton; nor is it disputed that during the spring and summer of 1921 the market price of cotton was subject to much fluctuation. The appellant insists that the measure of damages is the value of the property at the time of the alleged conversion, that is, in May, 1921—citing Fort v. Saunders, 5. Heiskell, 487; McGill v. Lumber Co., 111 Tenn., 552; Jones v. Allen, 1 Head, 627; Hedges v. Burke, 147 Tenn., 247. In the last-mentioned case it is said that ordinarily in cases of conversion the measure of damages is the market value of the property at the time of the conversion; but that where property is subject to fluctuation in value, like shares of stock, the measure of damages is the highest value between conversion and the expiration of a reasonable time within which the owner might have procured other like stock in the market. The court adopted what is known as the New York Rule, laid down in Baker v. Drake, 53 N. Y., 211, 13 Am. Rep , 507; which rule was also adopted by the Supreme Court of the United States in Galigher v. Jones, 129 U. S., 192; 32 L. Ed., 658. The Supreme Court of the United States said that the effect of allowing as damages only the value of the goods at the time of the conversion would be to give to the broker, or bailee, the control of the goods, subject only to nominal damages; that the injury consists not only in assuming control, but also selling at an unfavorable time and for an unfavorable price; that the rule allowing the highest intermediate value reached between the time of the wrongful act and a reasonable time thereafter, is to enable the party injured to place himself in the position he would have been in had not his rights been violated. This rule, known as the New York Rule was adopted by the Court of Chancery Appeals of Tennessee in Morris v. Wood, 35 S. W., 1013; and the decree in that case was affirmed later by the Supreme Court. There can be no difference in determining between the application of this rule to shares of stock, and to cotton, when both are subject to fluctuation in value. The broad general rule covering this sort of case is also laid down in 26 R. C. L., 1151. It is there set forth that where the property converted is of a class which is constantly being placed and sold on the market, many

courts have felt that to award the plaintiff merely the value of the property at the time of the conversion, with interest, would be inadequate relief because at that particular time the market might be at a low level. In this case it appears that the appellee had no knowledge of the conversion until about August 20, 1921, and the chancellor fixed the measure of damages as the value of the cotton on that date. We are of the opinion that under the foregoing authorities there is no error in this holding. The chancellor arrived at this market value of the cotton by maintaining the same ratio of value among the bales as the appellant claims to have received for the cotton in May, 1921, to-wit: eight cents per pound for two bales, six cents per pound for two bales and four cents per pound for the other bale. The appellant admits that four of the bales were worth about eighteen cents per pound in August, 1921. The chancellor fixed the market value of two bales weighing 451 pounds and 519 pounds at eighteen cents; two bales weighing 528 and 445 pounds at thirteen and one-half cents per pound and the other bale weighing 493 pounds at nine and one-half cents. It is clear, therefore, that on or about August 20, 1921, these bales of cotton were worth respectively as much as the amount found by the chancellor. The aforesaid rule as to the measure of damages would therefore sustain the amount of his decree inasmuch as the value is fixed as of the date when the appellee made demand for the cotton as his property, and the fact of the alleged conversion thereof became known to him for the first time.

The appellant further insists that prior to his sale of the cotton he had purchased the same from one John Henry Brooks, colored, as the owner thereof, and that therefore he does not owe the appellee anything. The appellant is a merchant and operator of a cotton gin at Aspen Hill, in Giles county. Brooks owned a tract of 101 acres near a tract of 107 acres belonging to the appellee Claude Clark. The appellant in the spring of 1920 sold to Brooks a lot of cotton seed and took from him a mortgage on fifteen acres of cotton and ten acres of corn and other personal property. The appellant at first relied upon this mortgage as security for this cotton, claiming priority over the appellee. But he admitted on his examination that his mortgage was not on the same property and he seemed to rely on a general understanding that when the crop should be made, he would be paid for his cotton seed; but he did not have any lien for the cotton seed. The appellee Clark for the year 1920 rented the cotton land on his place, and some corn land, to a negro named Clay Pointer. He received one-half of the corn and one-half of the cotton grown by Clay Pointer. The cotton amounted to two bales, which are two of the bales of cotton in question in this cause. Appellee furnished supplies to Clay Pointer

amounting to about $175. In the spring of 1920 the appellee made a contract with John Henry Brooks to furnish him supplies not to exceed $3000, and on July 31, 1920, he took a mortgage from Brooks on forty acres of cotton and about thirty acres of corn on the Brooks' farm, and one-half interest in about sixty acres of corn which Brooks was raising on the farm of appellee. Brooks raised three bales of cotton on his farm, the same being the three other bales in question in this cause. Appellee paid off a note in the bank and furnished supplies to the extent of more than $1500, to Brooks. In the fall of 1920 Pointer and Brooks agreed to deliver these five bales of cotton to appellee to be applied on their debts to him. By direction of appellee they delivered the bales at the gin yard of the appellant Simpson. The cotton was ginned by him at a cost of $32.50, which was credited to Simpson as aforesaid. The cotton was far from sufficient in value to pay the debt of Brooks, but it was just about sufficient to pay the debt of Panter to Clark. The appellee Clark intended to let the cotton remain at the gin yard of Simpson until the market might rise, as cotton was then very low, and as he said he had nothing to lose by waiting. Simpson claims that he did not know of the transaction between Pointer and Brooks and Clark, but he admits that he knew that Clark was interested in the cotton. He insists that in the month of March, 1921, he purchased all of this cotton from Brooks for an amount which was not suf-ficient to pay the debt of Brooks to him. He had no dealings with Pointer. He then sold the cotton in May, 1921, for the price hereinbefore set forth. Brooks denies that he sold the cotton to Simpson. One Dan Reed, colored, testified that he was present during part of the conversation between Brooks and Simpson when Brooks is alleged to have sold the cotton, that as Simpson and Brooks were coming out of the house Reed asked Brooks if he had sold the cotton and Brooks said, no, in the presence of Simpson. In August, 1921, the appellee directed Brooks to go and get the cotton and haul it to Pulaski. Brooks went and demanded the cotton of Simpson and Simpson told him that he had sold it in May. We think, therefore, that Brooks did not sell, or under-take to sell the cotton to Simpson in March, or at any other time. It is insisted by appellant that the landlord's lien of appellee had expired when he caused the cotton to be delivered for his benefit at the gin yard; that therefore Brooks and Pointer were the true owners of it and whether or not they sold it to Simpson the appellee had no lien or claim on it. To sustain this insistence the appellant says that the act extending the landlord's lien from three months to six months is unconstitutional. It is unnecessary to consider this question because the lien of the appellee on the cotton was merged into an absolute title by an agreement of the parties. Pointer

relinquished all of his title to his cotton to the appellee for credit on his debt, and so did Brooks. It was, therefore, not necessary to enforce the landlord's lien on Pointer's cotton or to foreclose the mortgage on Brooks' cotton. The appellee acquired a good title to the cotton. Having done this he could not be divested of his title by any act of the appellant in seeking to purchase the cotton from other parties.

We are therefore satisfied with the decree of the chancellor and it is affirmed. The costs of this appeal will be adjudged against the appellant and the surety on his cost bond.

Faw, P. J., and Crownover, J., concur.