MRS. MAMIE G. DYSART v. BERNARD HAMILTON et al.

Middle Section. November 23, 1929.

Petition for Certiorari denied by Supreme Court, March 15, 1930.

Wallace J. Smith, of Franklin, for S. M. Fleming Co., appellant.
Thomas P. Henderson, R. H. Crockett and W. W. Courtney, all
of Franklin, for Bernard Hamilton, appellee.

CROWNOVER, J.    This was a suit by Mrs. Dysart to recover the
balance due on a $2000 note with interest and attorney's fees, exe-
cuted by defendant Bernard Hamilton, on May 7, 1925, to mature
within six months, secured by a mortgage on his 1925 wheat, millet
and corn crops, which mortgage was executed and registered on the

same date; and also to recover of S. M. Fleming Co. for a conversion of said wheat crop delivered by Hamilton to the Fleming Co. It was alleged in said bill that when the said wheat crop was threshed Hamilton informed complainant that he had delivered said wheat to the defendant S. M. Fleming Co. for storage until the note matured in order to take advantage of the raise of price; that after said note matured she made demand on S. M. Fleming Co. for said wheat and was, on November 21, 1925, informed by them that the said wheat crop belonged to them, as Hamilton had grown it for them and had delivered it in July, 1925, and they had disposed of it, and refused to do anything. She, therefore, charged that they were guilty of conversion and asked for a decree for the value of said property with interest.

S. M. Fleming answered that he owned and operated the business under the name of S. M. Fleming Co. and that he had furnished seed, paid for labor incident to the planting, growing and harvesting of said crop, and that Hamilton had grown the crop for him or his company under a special parol contract made in October, 1924, authorized by the Pooling Statute of 1907, chapter 155, long before the mortgage was executed, and, therefore his company was not guilty of any conversion as the crop belonged to him, and he denied all liability.

Bernard Hamilton answered, admitting the indebtedness to complainant, and also admitted that defendant S. M. Fleming Co. had furnished the seed, wheat, etc., and furnished him some money on account for the making of said crop, but he denied that he had entered into a contract to grow the crop for S. M. Fleming Co., and denied that Fleming Co. owned the crop or had any interest in same, as that company had furnished him the seed and money on his own credit, and that the claim to ownership of the crop was an afterthought invented after he had become insolvent. He alleged that he had merely stored the wheat crop there without any intention of selling it to S. M. Fleming Co. at that time.

S. M. Fleming died on May 21, 1928, before the case was finally tried, and the suit was revived against his widow, Mrs. Cynthia Fleming, and Newton Cannon, as executors.

A jury was demanded by Fleming's executors and issues were presented, which the Chancellor refused to submit to the jury, as they were immaterial, to which Fleming's Executors excepted, and refused to present other issues. Thereupon, the Chancellor discharged the jury, and tried the cause on the pleadings and evidence, and he rendered a decree against Hamilton for the balance due on the note, with interest (less credits), $2090, and $300 attorney's fees, and held that Fleming's executors were guilty of a conversion of the wheat crop mortgage, there being 26,314 pounds

when threshed, of the value of $1.75 per bushel, and therefore he rendered a decree against the executors of S. M. Fleming for the sum of $896.50, being the price of said wheat less storage charges.

The executors have appealed and have assigned errors, which are, in substance, that the Chancellor erred:

(1) In not submitting to the jury one of the three issues presented by the defendant, Fleming's executors, which were in substance: Did Hamilton grow the wheat crop for Fleming, and deliver the same to him, under a parol contract, as alleged in Fleming's answer?

(2) In denying defendants, Fleming's executors, a trial by jury.

(3) In decreeing that Mrs. Dysart's title to the wheat was superior to that of Fleming Co.

(4) In rendering a decree for the sum demanded with interest.

After an examination of the record, we find the facts to be, that Bernard Hamilton, on October 1, 1924, represented himself to be without means and proposed to S. M. Fleming Co. that if Fleming would furnish him seed wheat, feed for stock, and pay for labor, he would grow a wheat crop on his land for S. M. Fleming Co. and when harvested he would thresh and deliver it to S. M. Fleming Co., which proposition was accepted and Fleming Co. furnished and paid for the seed wheat, rye and barley, for extra labor in planting the wheat, and after the crop had matured they furnished bags for the wheat and paid Hamilton $125 for threshing and incidentals. And on July 10, 1925, Hamilton hauled 26,314 pounds of said wheat and delivered the same to S. M. Fleming Co., which was then credited on Hamilton's account at the price of $1.57 per bushel, which totaled $688.54, and Hamilton still owed a balance on his account of $146.

On May 7, 1925, complainant, Mrs. Dysart, lent $2000 to Bernard Hamilton, for which he executed to her his note due in six months, secured by a mortgage on his 1925 wheat, millet and corn crops grown on his farm described, which mortgage was duly executed and registered. The millet crop was a failure, and she only received $324.88 out of the proceeds of the corn crop. When the wheat was threshed in July, 1925, Hamilton hauled and delivered the same to S. M. Fleming Co., as hereinabove stated, but he told Mrs. Dysart that he had stored the same with S. M. Fleming Co. to be kept in storage until the note matured. On November 21st, Mrs. Dysart told S. M. Fleming that she had a mortgage on the wheat and inquired about it, when she was informed by Fleming that the crop had been grown for him and delivered in July, 1925, and that he had within ten days thereafter disposed of the crop. On November 24, she wrote him a letter, demanding the wheat, but

Fleming refused to deliver any wheat and denied liability, whereupon this suit was brought, with result above stated.

Defendants, Fleming's executors, demanded a jury, and at the trial submitted three issues of fact, to-wit:

1. "Did the defendant, Hamilton, grow the crop of wheat in question and deliver same to the defendant S. M. Fleming Co., under a parol contract, made by Hamilton, to grow a crop of wheat on the lands mentioned in the bill for the S. M. Fleming Co.?"

The court refused to submit this issue, on the ground that it was immaterial. To which the defendants excepted and then offered another issue, to-wit:

2. "Did the defendant, Hamilton, grow the crop of wheat under a contract with the defendant Fleming, as alleged in the answer of the said Fleming Co.?"

The court refused to submit this issue, on the ground that it was immaterial. To which the defendants excepted, and then offered another issue, to-wit:

3. "Did the defendant Hamilton enter into a contract with the S. M. Fleming Co., to grow a crop of wheat for it as alleged in the answer of said company?"

The court refused to submit this issue, on the ground that it was immaterial, to which the defendants excepted.

The defendants were called upon to submit other and further issues, but declined and refused to do so. Thereupon, the Chancellor dismissed the jury and proceeded to try the cause on the pleadings and evidence, the depositions having previously been taken, and rendered the decrees as hereinabove stated.

■ We are of the opinion that none of the issues tendered were material, as none of them were determinative. As will be seen, all three issues go to the same proposition, that is, whether Hamilton grew the wheat crop for Fleming Co. and delivered the same to it under an oral contract made in 1924. The determination of this issue would not have determined the suit, hence the issues were immaterial.

■ It is insisted the Chancellor erred in discharging the jury and in denying defendants, Fleming's executors, a trial by jury. This assignment is not well made. The party applying for a jury trial must submit material issues; and if he fails to do so the verdict will be immaterial, and the court may, thereupon, determine the case as though no jury trial had taken place, if the record is in condition to justify that course. Chambliss' Gibson's Suits in Chancery, 1929 Ed., sec. 549; Gass v. Mason, 4 Sneed, 509; Ragsdale v. Gossett, 2 Lea, 729; First Nat'l Bank v. Oldham, 6 Lea, 719; Mills v. Faris, 12 Heisk., 452; Nelson v. Claybrooke, 4 Lea, 687.

As the executors refuse to submit other issues, they lost the right to trial by jury, and this assignment must, therefore, be overruled.

■ It is insisted the Chancellor erred in holding that Mrs. Dysart's title to the wheat crop was superior to that of Fleming's executors. This raises the determinative proposition in this lawsuit. We are of the opinion that this proposition is controlled by the Uniform Sales Act of 1919, ch. 118. Under said Act, sec. 76, "Goods include all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale."

At common law, growing crops or crops to be grown on the seller's land had a potential existence and might be sold or mortgaged. 1 Williston on Sales (2 Ed.), sec. 135; Watkins v. Wyatt, 9 Bax., 250; Carson v. Browder, 2 Lea, 701; 35 Cyc., 44-45, 302. And a parol sale of such crops was valid as it was not within the Statute of Frauds. See 27 C. J., 199-200; Carson v. Browder, supra; Watkins v. Wyatt, supra.

But under the Uniform Sales Act of 1919, chapter 118, section 5, the sale of growing crops, having a potential existence, is treated as a sale of future goods.

"It is obvious in the nature of the case that it is impossible for a seller to transfer title to goods of which he has neither ownership nor possession at the time of the sale. As he has no title he can give none, though he can make a contract to sell them." 1 Williston on Sales (2 Ed.), sec. 130.

"It is a common learning in the law that a man cannot grant or charge that which he hath not." Perkins' Profitable Book, Tit. Grant, sec. 65.

"The law has long been settled that a person cannot by deed, however solemn, assume that which is not in him. In other words, that there cannot be a prophetic conveyance." Belding v. Read, 3 H. & C. 955, 961, per Pollock, C. B.

"In the case of sales the objections which exist to the doctrine of potential possession as applied to mortgages are enormously increased. No record is necessary for the validity of a sale, and if the owner of land may sell his future crops, the result may well be hardship upon innocent third persons. The rules of law in regard to delivery and forbidding retention of possession by the seller must be relied on to afford protection to such persons. It seems, therefore, that the conclusion of the draughtsman of the English Sales of Goods Act is sound, that 'There is no rational distinction between one class of future goods and another.' Consequently, the American Sales Act, following the English Statute, makes no exception to the general rule as to future goods in favor of

goods of which the seller has potential possession. The buyer of such goods cannot acquire under the provisions of this act more than an equitable property right. He will not acquire even this, moreover, except in jurisdictions which give such a right in regard to future goods of other kinds. As mortgages, however, are not covered by the Sales Act except in a few instances where it is so specially stated, the power to make an effective mortgage of crops or other future goods is not affected by the act.'' 1 Williston on Sales (2 Ed.), sec. 135, p. 262.

''Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods.'' Uniform Sales Act of 1919, ch. 118, sec. 5, subsec. 3.

Therefore, a sale' of future goods or crops to be planted and grown in the future, is at best only a sale of future goods and is therefore an executory contract of sale. See 1 Williston on Sales (2 Ed.), sec. 137, p. 264.

''Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

. . . . . . .

''Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done.'' Uniform Sales Act of 1919, ch. 118, sec. 19.

It is, therefore, seen that unless a contrary intention appears and the seller is bound to do something to the goods to put them into a deliverable state, without more, the title to the property does not pass until such thing is done. 1 Williston on Sales (2 Ed.), sec. 265; Blackwood v. Cutting Packing Co., 76 Cal., 212, 9 Am. St. Rep., 202.

''Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge, or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same.'' Uniform Sales Act of 1919, ch. 118, sec. 25.

Under this section, even where the goods are in existence and in the possession of the seller, he can convey a good title to an

innocent purchaser for value without notice. A power of sale includes the power to mortgage. See Watkins v. Wyatt, 9 Baxter, 250; 1 Williston on Sales (2 Ed.), sec. 135.

Mrs. Dysart did not know about the contract between Hamilton and Fleming, that the crop should be grown for Fleming, until November 21, 1925, and, therefore, she was a bona-fide mortgagee for value. It follows, that, as the Fleming-Hamilton contract was merely an executory contract of sale, title did not pass, and Hamilton being in possession of the crop, having mortgaged the same to Mrs. Dysart, her mortgage is superior to the rights of S. M. Fleming Co.

As we view it, the Pooling Act of 1907, ch. 155, cannot help the Fleming Co., as section 25 of the Uniform Sales Act is directly in point. And if there was any conflict, it would be repealed by this section of the Sales Act. But, as we view it, there is no conflict and the Pooling Act confers no title or right on S. M. Fleming Co. as against innocent purchasers and mortgagees without notice.

It results that this assignment of error must be overruled.

It was insisted that the sale of future crops must be in writing. and registered. There is no law in Tennessee requiring this. A sale of future crops or growing crops is not within the Statute of Frauds, as hereinabove shown, other than where it violates section 4 of the Uniform Sales Act. Where the sale is for more than $500 it is not enforceable by action unless the buyer shall accept a part of the goods so contracted to be sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless there is some note or memorandum in writing of the contract or sale signed by the party to be charged or his agent in his behalf. As we view it, the furnishing of the wheat, rye and barley seed, paying for the work and advancing money to pay threshing bills, etc., is part payment. It is not necessary that the contract should be reduced to writing.

It is insisted that the Chancellor erred in rendering a decree for the sum demanded with interest: first, because he fixed the price at $1.75 per bushel, which was the market price at the time that she first learned of the conversion just before she brought this suit. It is insisted that it should be fixed at the market price of wheat at the time of the conversion in July, 1925. We are of the opinion that this proposition is untenable. Where the property converted is of the class which is constantly being bought and sold on the market, to award the plaintiff merely the market value at the time of the conversion with interest would be inadequate relief, because at that particular time the market was at its lowest level. Our courts have adopted the rule that the plaintiff in such cases is not limited to the recovery of merely the value of

the property at the time of the conversion, but may recover the highest value which the property had reached between the time of the conversion and a reasonable time to replace it on the market. 26 R. C. L., 1151, sec. 66; 38 Cyc., 2096; Clark v. Simpson, 1 Tenn. App., 397; Morris v. Wood, 35 S. W., 1015; Hedges v. Burke, 147 Tenn., 247, 247 S. W., 91. We think the Chancellor was not in error in fixing the price as of the date she first learned about the conversion.

Second, it is insisted that there was a nine hundred pound mistake in the weight of the wheat in favor of Bernard Hamilton, that one of the wagon tickets showed that there was only four thousand five hundred and forty pounds, but the bookkeeper made a mistake of nine hundred in entering that load on the books, in that he put it at five thousand four hundred and forty pounds. By adding all the wagon tickets and then subtracting twenty-eight thousand one hundred and fifty pounds allowed to Guy Hamilton by agreement, we find that Bernard Hamilton is credited with nine hundred pounds too much. Therefore, Mrs. Dysart is entitled to recovery for only twenty-five thousand four hundred and fourteen pounds, and this assignment to this extent is sustained.

Third, it is insisted that the Chancellor erred in not allowing the Fleming Company a credit of $125 for the money advanced for threshing the wheat and other incidentals. We are of the opinion that the Chancellor did not err on this proposition. In recent years a somewhat similar doctrine to that of equitable lien on lands has been applied to some extent to personal property. And where one furnishes money to another with an agreement that that party will execute a mortgage on realty or personalty, the courts of equity declare that such person has an equitable lien on that specific property. See Lusk v. Hitt, 7 Tenn. App., 393; Milam v. Milam, 138 Tenn., 686, 200 S. W., 826.

"It has been assumed that the doctrine that an attempted transfer of future goods would give an equitable property right to the mortgagee is also applicable to agreements to sell. If an equitable right arises by virtue of an agreement to sell future goods, it may conceivably be based on either of two grounds: (1) The enforcement or specific performance of the contract, resulting in effect in an equitable lien upon the property; (2) the imposition of an equitable lien upon the property—not upon principles of specific performance, but on the broad and somewhat indefinite principle that one who has parted with money or property, expecting a specific return, should be assured, if not that return, then the redelivery of

what he parted with. On this ground in England and in some of the States of the country an equitable lien is given on real estate for the purchase price, both to an unpaid vendor, and to a vendee who has paid the price or a portion of it in advance." 1 Williston on Sales (2 Ed.), sec. 141.

But we are of the opinion that where the purchaser has advanced the price and has paid for goods not delivered the title has not passed, and the better rule is that he has no lien on the goods for what he has paid, and he is given no equitable lien under the Uniform Sales Act. 1 Williston on Sales (2 Ed.), secs. 138-144; Fry on Specific Performance, sec. 82; Belding-Hall Mfg. Co. v. Mercer & Ferdon Lbr. Co., 175 Fed., 335.

He is given a right of action for damages for breach of the contract under the Pooling Statute of 1907, chapter 155. But that statute does not give him the title to the property or an equitable lien thereon.

However, equitable rights or liens are invalid as against bonafide purchasers for value of the legal title without notice of the equity. 1 Williston on Sales (2 Ed.), sec. 140. It follows that the S. M. Fleming Company has no title or equitable lien upon the crop as against Mrs. Dysart for the $125 advanced.

It results that as all of the assignments of error are overruled, with the exception of that part as to the nine hundred pounds of wheat, the decree of the Chancellor must be in all things affirmed except as to the nine hundred pounds of wheat, and a decree is here entered for $741.25, (less storage charges, $14), together with interest thereon from November 21, 1925. The costs of the cause, including the costs of the appeal, are adjudged against the Executors of S. M. Fleming and the sureties on the appeal bond. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.