[L. A. No. 13877. In Bank.—September 15, 1932.]

ACME INVESTMENT CORPORATION, Appellant, v. J. D. THOMPSON, Respondent.

Hickcox & Trude for Appellant.

Frank Birkhauser and M. C. Atchison for Respondent.

THE COURT.—The petition for hearing in this matter was granted in order that this court might amend the judgment entered by the District Court of Appeal of the Fourth Appellate District, otherwise the opinion written by Mr. Presiding Justice Barnard and concurred in by Associate Justice Jennings and Associate Justice Scovel, sitting *pro tempore*, is adopted.

"This is an action on a promissory note given for $487, the complaint being in the usual form. The answer admits the execution of the note; alleges that the same was obtained from the defendant by the plaintiff by means of false and fraudulent representations; and alleges that there was no consideration therefor. The court found that all of the allegations of the complaint are true, except only the allegations that the note was given for a valuable consideration and 'that same is due and owing from defendant to plaintiff'; that no false or fraudulent representations were made by the plaintiff or its agents; and that there was no con-

sideration for the note. Judgment was entered for the defendant, followed by this appeal.

"The appellant argues that the findings to the effect that the note in question was given without consideration are mere legal conclusions and not properly findings at all. While the findings upon this subject are open to criticism, we will, for the purpose of this opinion, take them as sufficient and consider the main point presented, which is that the evidence is not sufficient to sustain any such finding or conclusion, which contention we think must be sustained.

"It appears from the evidence that one Jackson was in possession of certain real property in Imperial county, under a lease dated April 15, 1926, and expiring February 1, 1927, upon which land he raised a crop of cotton during the year 1926. While the lease was not introduced in evidence, being only marked for identification, it appears from other evidence that appellant was to receive one-fourth of the crop produced, in return for the use of the land. The respondent made certain advances to Jackson and took a crop mortgage covering this crop of cotton. After harvesting of the crop had started, an agent of the appellant who had heard that the crop was being delivered to the respondent, called upon him and asked him about the landlord's share. This agent testified that at that time it was agreed between them that the respondent should go ahead and sell the crop and turn in one-fourth of the proceeds to the appellant. While the respondent testified he could not remember whether such an agreement was made, it is undisputed that he then said that he would come in as soon as the crop was sold and 'make return'. The harvesting of the crop continued through the fall of 1926 and the early part of 1927 and at its conclusion the respondent came in and reported to appellant's agent the amount of the proceeds. At that time respondent and appellant's agent took these returns and figured out 'what the one quarter share would be'. The money was not paid and on September 24 and again on September 29, 1927, the appellant's agent wrote to the respondent demanding immediate payment of the money and threatening suit. On October 1, 1927, the respondent replied as follows:

"'Your letter of Sept. 29th received and note what you have to say regarding Jackson-Polle rent.

" 'I am sorry to say I cannot pay this at this time, as things have been very bad this year, however if it is satisfactory I will give you my personal note if you or your people will wait until the harvesting of the barley crop as that will be the only chance I have of collecting the money. Jackson has no money at all so if it will be satisfactory I will make you a note at 6% interest payable June 15th, 1928. . . . Please let me know if this will be satisfactory as it is all I can do at this time.'

"On October 19, 1927, the appellant's agent wrote the respondent that they would take his note for the amount due, being $457, if he would include interest from the preceding December, 'about the time the money was due', and enclosing a note for $487, which was signed and returned. The respondent testified that this note represented one-quarter of the proceeds of the crop sold, plus 'some interest'. He also testified that at the time he considered that the appellant 'was entitled to its rent', that the appellant had threatened to sue him, and that he gave the note because he could not afford to be sued at that time. While there is some conflict in the testimony, there is no conflict on the essential facts.

█ "Under well-settled rules the crop mortgage held by the respondent covered only Jackson's interest in the crop and did not cover the one-fourth share in the same to which the appellant was entitled (*Sunol* v. *Molloy*, 63 Cal. 369; *Woodsend* v. *Chatom*, 191 Cal. 72 [214 Pac. 965]). █ While we think the evidence shows an agreement on the part of the respondent to sell the crop and turn over one-fourth of the proceeds to the appellant, regardless of whether or not such an agreement was made, respondent was obligated to turn over to appellant one-fourth of such proceeds, since he had sold that part of the crop to which he had no right and which belonged to the appellant. In such a situation he offered to give the note if he were given time to pay, which offer was accepted. It also appears that he gave the note to avoid being sued, which, as he says, he could not afford to have happen at that time. It not only appears that there was ample consideration for the note but the record is without any evidence to sustain a finding and conclusion to the contrary. The respondent points out that he answered 'None whatsoever' to a ques-

tion as to whether there was any consideration for his signature to this note. This conclusion, of course, is not evidence.

■ "Some contention is made by the respondent that the evidence shows that the note was given upon a representation that the appellant would let the same tenant have the land to put into a crop of barley the succeeding year. While respondent's letter of October 1, 1927, indicates that he hoped to get some money from a barley crop, it falls far short of making the note conditional upon such an event. If this contention could be sustained it would not establish an absence of consideration, there being ample consideration, otherwise, for the note. Had such a promise been made by the appellant, it would appear to be without consideration, since the amount of the note was due from the respondent anyway. If such a representation had been made, it might have been material to a defense of misrepresentation, but the court found that no misrepresentations were, in fact, made. Furthermore, the evidence does not show a misrepresentation in this respect. When asked if the appellant or any of its agents had ever told him that either he or Jackson could have the land for the purpose of putting in a barley crop, the respondent replied that he did not remember, but that he thought one of these agents said 'he would help us out'. Not only is there no satisfactory evidence that such a representation was made but there is no evidence that, if made, the appellant did not do all within its power to comply therewith. When asked how he happened to execute this note, the respondent answered:

" 'Because when Jackson and Polle had failed that $420.00 of paying me what they owed me, I thought possibly if we could get Jackson to put this barley in, his partner had died, he got killed accidentally while this transaction was pending, to put this same piece of ground into barley, we could get the rent for the Acme Investment Corporation and I could get my $420.00, which I was in the hole on the cotton crop previous. That was my idea in signing this note and sending it to them, and Jackson failed to put the barley in.'

"The respondent also testified that he understood that Jackson 'could not get finances to put the barley in'. ■ The respondent asks us to consider two affidavits which were

filed in connection with a motion he made asking to reopen the case for further evidence. Not only are these affidavits not in the record and not properly before us, but we may add that if they were to be considered, they would only strengthen the view we have here taken.

"The note provided for an attorney's fee, and the court found, in accordance with the allegation of the complaint, that a reasonable attorney's fee in this case is $100."

The judgment is reversed.