## TOZZI v. LINCOLN NAT. LIFE INS. CO.
### No. 8838.

Circuit Court of Appeals, Ninth Circuit.
March 27, 1939.

Torregano & Stark, of San Francisco, Cal. (M. C. Symonds, of San Francisco, Cal., of counsel), for appellant.

Livingston & Livingston, of San Francisco, Cal. (Leonard J. Bloom, of San Francisco, Cal., of counsel), for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

In this action, the District Court in and for the Northern District of California, rendered a decree in favor of the appellee and against James Tozzi, an individual doing business under the name of James Tozzi & Company. From the decree appellant has prosecuted this appeal.

The Lincoln National Life Insurance Company, an Indiana corporation, appellee, owned certain real property in Fresno County, State of California, known as the Alameda Vineyards, which property had formerly belonged to one George W. Day, which had been foreclosed by appellee.

On January 2, 1935, the Life Insurance Company executed a written lease of said real property to said Day. Among other things the lease provided:

"The term of this lease commenced as of January 2, 1935, and will expire on November 15, 1935. The lessee will deliver to the lessor as rental for said demised premises thirty percent (30%) of all crops grown on the property, and the lessee hereby assigns and transfers to the lessor an undivided thirty percent interest in and to said crops as and when the same may be grown and/or be harvested.

\*   \*   \*   \*   \*   \*   \*

"2. The lessee further agrees as follows:

\*   \*   \*   \*   \*   \*   \*

"(b) Not to let or underlet the whole or any part of the premises, nor assign, mortgage or pledge this lease, or any interest therein, either voluntarily or in-

voluntarily, without the written consent of the lessor.

\* \* \* \* \* \* \*

"The lessee agrees that no crop mortgage will be executed upon the crop or any part thereof without lessor's written consent.

"The lessee particularly agrees that he will not sell, deliver or remove from said land or obligate himself to sell, deliver or remove from said land any of the crops grown thereon, in any manner whatsoever until he shall first have made arrangements satisfactory to the lessor for delivery of lessor's share of said crops to the extent and in the manner hereinabove and hereafter provided. Under no circumstances may the lessee bind the lessor by any contract or other act whatsoever, it being expressly understood that the lessee is not the agent of the lessor for any purpose."

Lessee Day required financing in order to make the crop. The Life Insurance Company did not advance any money. In order to secure funds, Day talked with appellant Tozzi prior to March 11, 1935, at Stockton, California. He explained to Tozzi that he was operating, or proposing to operate, the leased premises, and Tozzi offered to advance him up to $8,000 for the production of a crop, on the basis of a crop mortgage provided that the Life Insurance Company consented to the mortgage. A clause in the lease itself required such consent to "any crop mortgage." The mortgage was prepared but no signatures were attached thereto. In order to obtain the required consent of the appellee to the mortgage, Day brought the prepared instrument from Stockton to San Francisco, on March 11, 1935, and there met A. A. Semsen, Supervisor of the Loan Department of appellee, in the office of Livingston & Livingston, attorneys for appellee, where a conversation took place relative to giving consent to the mortgage. Appellant was not present at this conference. Day told Semsen that he would not have sufficient money to cultivate and harvest a crop and he asked that appellee consent to the mortgage as prepared. Thereupon, Lawrence Livingston, one of said attorneys, wrote the following upon the bottom of said mortgage: "The foregoing mortgage is hereby consented to this 11th day of March, 1935. The Lincoln National Life Insurance Co. By," and A. A. Semsen

the company's agent at the suggestion of appellee's attorney affixed his name thereto.

At this meeting a letter was prepared addressed to Day, which was signed by both Semsen and Day. The letter reads as follows:

"March 11, 1935.

"Mr. George W. Day, Reedley, California.

"Dear Sir: You have presented a chattel mortgage dated March 8th, 1935, to James Tozzi & Company, securing the sum of $8000. You have represented to us that this money is to be used to help finance the growing and harvesting of crops on the property recently leased by us to you.

"At your request and at the request of your mortgagee, we have consented to said mortgage with the understanding and upon the representation that said money will be so used. It is understood that our rights under our lease shall not be affected in any way by our consent to this mortgage. You are to pay the mortgagee all amounts called for by the mortgage out of your own funds for your own share of the crop, and we are to receive our share of the crop net, free and clear.

"Please signify your agreement by signing below.

"The Lincoln National Life
Insurance Company
"By A. A. Semsen, Supervisor.
"I agree to the above
"George W. Day."

On March 12, 1935, the day following the endorsement of consent upon the mortgage by appellee, Day and the appellant Tozzi signed the affidavit of good faith attached to the mortgage and made oath to the same before a Notary Public and the same was recorded with the Recorder of Fresno County on March 13, 1935.

The mortgage provided among other things:

"That as security for the payment of the sum of Eight Thousand Dollars ($8,000.00) to be advanced by the Mortgagee to the Mortgagor, as follows:

"Three Thousand Five Hundred Dollars ($3,500.00) on the date hereof; One Thousand Dollars ($1,000.00) on April 1st, 1935; One Thousand Five Hundred Dollars ($1,500.00) on May 1st, 1935; and Two Thousand ($2,000.00) Dollars on June 1st, 1935; to be repaid not later than

Nov. 15, 1935, and also of all expenses including attorney's fees incurred by the mortgagee in enforcing or protecting this security, or protecting the property hereby mortgaged, with interest on such advances and expenses from dates when made and incurred at the rate stipulated in said note, the Mortgagor mortgages to the Mortgagee all the crops growing and to be grown and produced during the year 1935, upon that real property situate in the County of Fresno, State of California, described as follows,

\* \* \* \* \* \* \*

"And it is agreed that the Mortgagor will care for and protect the mortgaged property until it is fit for harvest, and will then pick, cure and deliver it to the Mortgagee or assigns who may sell the same at private sale without demand of performance or notice; that the Mortgagee at all times may enter upon the premises to view said mortgaged property and in case default be made by Mortgagor in the payment of said note, or in any of the conditions herein to be performed by the Mortgagor, then the Mortgagee or assigns, shall be entitled to and may take possession of the mortgaged property, care for, pick, cure and pack same, and without demand of performance or notice may, at either public or private sale, without notice, sell the mortgaged property, cured or uncured, in such market as the Mortgagee may select, and from the proceeds thereof may retain all expenses incurred and the debt hereby secured, and the costs and attorney's fees incurred in enforcing this security."

When testifying, Mr. Semsen, the agent for the appellee, said that although he read the mortgage through when it was presented to him for approval he did not know that it covered the entire crop grown on the property.

The lease from appellee to Day was never recorded. There is no evidence that appellant was informed of its contents, nor of the letter of March 11, 1935, consenting to the mortgage and to the effect that the Insurance Company's rights under the lease were not to be affected by it. It does not appear that appellant had actual notice of these matters until October 9, 1935, when Semsen, the company's agent, first met Tozzi in Stockton. A conversation occurred at that time and place at which Tozzi, Day and Semsen were present. Semsen told them that he had called on Mr. Day to collect the company's 30% share of the crop. He then learned that the entire proceeds of the crop had been kept by defendant Tozzi and that he had advanced more money than the original $8,000 stated in the mortgage. Tozzi claimed that he had a right to advance all monies necessary to harvest the crop regardless of appellee's share.

By the terms of the mortgage the amount secured thereby was to be repaid not later than November 15, 1935, at which date the mortgage would be in default.

A letter addressed to appellant Tozzi, dated November 4, 1935, and received by him on the next day was given in evidence, and in part reads as follows:

"November 4th, 1935.

"We have been advised by Joseph D. Malloy, Esq., your counsel, to the effect that you claim that the rights of the Lincoln National Life Insurance Company to certain crops grown on land under lease to George W. Day are subject and subordinate to your rights as crop mortgagee of George W. Day. This is to advise you that said claim is entirely without foundation.

"The Lincoln National Life Insurance Company is the owner of a thirty per cent. interest in said crops, free and clear of any claims on your part or on the part of any other person, firm, or corporation.

"The said Lincoln National Life Insurance Company is entitled to its interest in said crop in kind, as and when said crop is harvested.

"We are willing to make arrangements with you for the disposal of the crop on the best possible terms, so that neither you nor our client will suffer any loss through division of the crop prior to sale. But we are unwilling to permit you to take, handle, or use money which belongs to our client and we therefore notify you accordingly."

The court admitted in evidence as the transcript of the books of appellant, a statement of account between him and George W. Day, showing advances evidenced by the note with interest to March 31, 1936, to be a total of $8,539.19, and further advances captioned on the Statement as "Additional Advances pursuant to terms of mortgage," in the amount of $8,271.34, making a total of $16,810.53.

Against this there was shown on the statement, total credit of $8,413.52, leaving a balance due to Tozzi on March 31, 1936, the date of the statement of account, of $8,397.01. It was stipulated that the total receipts from the sale of the crops were the sum of $11,571.46.

When this statement was offered in evidence, in lieu of the introduction of the books and original documents, counsel for appellee stated:

"* * * there is no objection to the introduction of the statement in evidence as a transcript of the books of Tozzi. Without any admission on our part it is anything more than a transcript of his book and that the books were duly and regularly kept in the ordinary course of business."

The findings of fact, adverse to the claims of appellant, are voluminous and to recite them in detail would unduly extend this opinion. The substance of these findings will be readily discerned from such of the assignments of error as we deem necessary to discuss and which appear sufficient for a complete determination of this appeal.

The lease from appellee to its tenant Day provided:

"The lessee will deliver to the lessor as rental for said demised premises thirty percent (30%) of all crops grown on the property, and the lessee hereby assigns and transfers to the lessor an undivided thirty percent interest in and to said crops as and when the same may be grown and/or be harvested."

■ Appellant's first contention is that appellee was not the owner of an undivided 30% interest in all of the crops to be grown as tenant in common with defendant Day. Upon this point the trial court made the following findings:

"From the time of the execution of said lease, 'Exhibit A', plaintiff was the owner of an undivided 30 percent interest in all the crops to be grown on said land, as tenant in common with defendant Day. Said lease did not create or purport to create a chattel mortgage or lien upon said crops or any part thereof."

"* * * it is true that defendant Tozzi held and holds a mortgage upon the crops grown upon said land, which said mortgage was executed by defendant Day, but said mortgage is and was not a prior or superior claim to any claim of plaintiff in or to said crops or the proceeds thereof, and it is not true that the claim arising by said mortgage is or was prior or superior to any right, title, or interest in any of said crops as claimed by plaintiff but, on the contrary, said mortgage is and was subject and subordinate to plaintiff's interest in said crops, and insofar as plaintiff is and was concerned said mortgage is and was effectual only as to 70 percent of said crops. It is not true that, as to plaintiff, said mortgage is or was effectual as to the total valuation of said crops. * * *"

Here Day was not the owner of the entire crop but was tenant in common with appellee. Besides the provisions of the agreement heretofore set out which transferred ownership to appellee of 30% of the crops grown on the premises, there were other provisions in the contract giving or reserving to appellee authority as to the farming of the premises, inhibitions against growing any different crops; also that he was not to sell, deliver or remove any crops from the land until appellee's share had been delivered; that no cash sales of crops were to be made without appellee's written consent and other like terms concluding with the following:

"It is the intent hereof that the lessor shall have equal voice with the lessee in the business management involved in the sale of crops."

All of these provisions demonstrate that this instrument created a tenancy in common and that Day could not mortgage appellee's interest therein. The decisions of the California Courts have consistently sustained this view.

In Howell v. Foster, 65 Cal. 169, 172, 173, 3 P. 647, 648, it is said:

"There is no doubt that where one man farms land of another, under an agreement by which he is to give the owner a part of the crop raised for its use, he and the owner, in the absence of a stipulation providing otherwise, become tenants in common of the crops raised."

In Sunol v. Molloy, 63 Cal. 369, it was held that:

"The mortgagee of a growing crop planted by a tenant under a contract which entitles the landlord to a portion of the crop, only succeeds to the interest of the mortgagor; and where the mortgage is made by the tenant, and the mortgagee

takes possession, harvests the crop, and converts the whole to his own use, he is liable for the share of the landlord * * *."

And to the same effect: Baughman v. Reed, 75 Cal. 319, 17 P. 222, 7 Am.St.Rep. 170; Tuohy v. Linder, 144 Cal. 790, 78 P. 233; Woodsend v. Chatom, 191 Cal. 72, 214 P. 965; Acme Investment Corp. v. Thompson, 216 Cal. 335, 14 P.2d 87; Cox v. Miller, 15 Cal.App.2d 494, 59 P.2d 628.

Appellant argues that the lease was not effective to pass any title in the crops to appellee. He invokes Section 1725, Subdivision 3 of the Civil Code of the State of California, which is a part of the Uniform Sales Act adopted in California, and which reads as follows:

"Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods and as soon as the seller acquires the goods the property therein shall pass to the buyer without further act if the parties so intend unless the agreement otherwise provides",

and that part of Section 1796 which states that the word "goods," as used in the Act, includes "growing crops." It is insisted that these enactments modify the law of prior decisions cited by appellee to support the decision of the trial court.

In support of this contention appellant cites Dysart v. Hamilton (Tenn.Court of Appeals), 11 Tenn.App. 43.

The facts in this case were that one Hamilton, who was the owner of the land, in October, 1924, represented himself to be without means and proposed to S. M. Fleming Co. that if Fleming would furnish him seed wheat, feed for stock and pay for labor, he would grow a wheat crop on his land for S. M. Fleming Co. and when harvested he would thresh and deliver it to S. M. Fleming Co. This proposition was accepted by Fleming Co. In May, 1925, Hamilton borrowed $2,000 from one Dysart and executed a note secured by a mortgage on the 1925 wheat, millet and corn crop which was recorded. When the wheat was harvested in July, 1925, Hamilton delivered it to S. M. Fleming Co. The question which the court was called upon to determine was, Who had the prior right to the wheat crop, S. M. Fleming Co. or Dysart? The court held that the case was controlled by the Tennessee Uniform Sales Act of 1919, c. 118, § 76; that the term "goods" in the statute

included "growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale." It was also pointed out that "if the owner of land may sell his future crops, the result may well be hardship upon innocent third persons;" that the transaction between Hamilton and Fleming purporting to effect a sale of future crops to be planted and grown in the future was "at best only a sale of future goods and * * * therefore an executory contract of sale." Further, in disposing of the case the court said at page 50:

"Mrs. Dysart did not know about the contract between Hamilton and Fleming, that the crop should be grown for Fleming, until November 21, 1925, and, therefore, she was a bona-fide mortgagee for value. It follows, that, as the Fleming-Hamilton contract was merely an executory contract of sale, title did not pass, and Hamilton being in possession of the crop, having mortgaged the same to Mrs. Dysart, her mortgage is superior to the rights of S. M. Fleming Co."

■ Some of the outstanding differences between this cited case and the one at bar are that here Day was not the owner of the property as was Hamilton. In the Tennessee case Mrs. Dysart had no knowledge of any claim of Fleming. Here Tozzi knew that the appellee was the owner of the premises and that Day was operating under a lease and from what transpired in connection with the procuring of appellee's approval of the mortgage it could well be inferred that Tozzi was acquainted with the terms of the lease. In any event, before Day executed the mortgage and before Tozzi advanced any money, he knew of the existence of the lease. Whether he had been advised of its provisions does not appear, but knowing of its existence he would be charged with knowledge of its terms.

"* * * Whenever a party has information or knowledge of certain extraneous facts, which of themselves do not amount to, nor tend to show, an actual notice, but which are sufficient to put a reasonably prudent man upon an inquiry respecting a conflicting interest, claim or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to a discovery of the truth, to a knowledge of the interest, claim, or right which really

exists, then the party is absolutely charged with a constructive notice of such interest, claim, or right. * * *" Pomeroy's Equity, 4th Ed., Sec. 608.

Under all the circumstances Tozzi was not a subsequent encumbrancer without notice as was Mrs. Dysart in the Tennessee case.

But appellant insists that the transfer from Day to the Lincoln National Life Insurance Co. of an undivided 30% interest of the crops was so far controlled by the Uniform Sales Act that title thereto did not pass but the transaction constituted a mere contract to sell and said statute having been enacted subsequent to the decisions above cited their authority was abrogated. This contention is effectively disposed of by calling attention to Section 1729(3) of the Civil Code of California, 1937, which is a part of the same act, from which we quote:

"Where transferring or promising to transfer any interest in real estate constitutes the whole or part of the consideration for transferring or for promising to transfer the property in goods, this act shall not apply."

It requires no citation of authority to establish that the contract was entered into in consideration of an interest in the crops. The agreement created a tenancy whereby the lessee acquired an interest in the land. Thus to hold that the agreement of lease in this case was controlled by the Uniform Sales Act would be to disregard this plain provision of the statute which expressly excludes from its operation a contract such as we have here.

In a number of assignments of error appellant claims that appellee was estopped to assert any interest in the crop paramount to the mortgage of appellant. By these different assignments it is variously claimed that the court erred:

"in finding that plaintiff's written consent to the execution of said mortgage between defendant Day and defendant Tozzi by endorsing at the end thereof the following, 'The foregoing mortgage is hereby consented to this 11th day of March, 1935' was not an agreement to anything whatsoever but was solely a consent to the execution of said mortgage * * *";

"in finding and decreeing that plaintiff is not, by consenting to the execution of said mortgage or otherwise, estopped to deny the right of defendant Tozzi to the proceeds of the sale of said crops * * *";

"in finding that at the time of said crop mortgage, defendant Tozzi was put upon notice of the terms of said lease * * *";

"in finding that plaintiff never at any time had any intent to deceive defendant Tozzi or any other person, nor was plaintiff at any time careless or negligent in any manner or to any extent whatsoever, but, on the contrary, in all respects plaintiff acted in complete good faith, * * *";

"in finding that plaintiff did not intend to waive and did not waive any of its rights under its said lease and in and to said crops * * *";

"in finding that prior to any default in the terms of said promissory note and the mortgage securing the same, defendant Tozzi received actual knowledge of the fact that plaintiff owned a thirty per cent interest in said crop and that defendant Day's interest therein amounted to only seventy per cent thereof, * * *";

"in finding that in all respects the conduct of plaintiff has been fair, just and equitable and that plaintiff has done full and complete equity toward all defendants in this action * * *."

In support of his assignments appellant argues that by reason of the doctrine of equitable estoppel appellee's rights in the crops are postponed to his. He relies upon the following facts:

Day, the lessee and mortgagor, testified that it was "his impression * * * that Tozzi knew there was a lease and that the witness was proposing to operate under a lease;" that he "undoubtedly explained to Tozzi that he was operating or proposing to operate under a lease"; that he told appellant that he "was a tenant, in one way or another; that was before Tozzi loaned the money." Day also testified that the only thing that was positively said between himself and appellant with reference to appellee was that appellant would advance $8,000 toward the production of the crop, provided appellee consented to the mortgage. After this conversation Day went to San Francisco and saw Semsen, appellee's authorized agent, in the office of Livingston & Livingston, attorneys for appellee, and at that time, after a discussion, appellant not being present, appellee's agent wrote the following upon

the bottom of the mortgage: "The foregoing mortgage is hereby consented to this 11th day of March, 1935. The Lincoln National Life Insurance Co. By A. A. Semsen."

As upholding his position, appellant cites Dolbeer v. Livingston et al., 100 Cal. 617, 35 P. 328. Also, McDanels v. General Ins. Co., 1 Cal.App.2d 454, 36 P.2d 829, quoting from page 459, 36 P.2d page 832 as follows:

"The estoppel claimed by appellant and recognized by the above-mentioned cases is that form of estoppel in pais called by text-writers and known to jurists as quasi estoppel. This class of estoppel is sometimes expressed in the language of the rule or maxim that one cannot blow both hot and cold. It is based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another. To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another; the person invoking the estoppel must have been induced to change his position, or by reason thereof the rights of other parties must have intervened. 10 Cal.Jur. 645."

In this presentation appellant overlooks other important facts and pertinent legal principles which the lower court took into consideration.

Tozzi in dealing with Day knew that the latter was operating under a lease. He knew, or should have known, what the terms of the lease were and what limitations Day was under. It appears that he knew that Day was required to have the consent of the appellee before he could execute a mortgage on his own 70% of the crop. This was expressly stated in the lease in the following terms:

"The lessee agrees that no crop mortgage will be executed upon the crop or any part thereof without lessor's written consent."

Had Day failed to secure this consent the lease could have been forfeited. Further, by the express terms of the lease Day could not bind appellee. The instrument provides:

"Under no circumstances may the lessee bind the lessor by any contract or other act whatsoever, it being expressly understood that the lessee is not the agent of the lessor for any purpose."

The appellee made it very plain to Day in the letter which was executed contemporaneously with the consent to the mortgage that there was no waiver of any of its rights. It said:

"You are to pay the mortgagee all amounts called for by the mortgage out of your own funds for your own share of the crop, and we are to receive our share of the crop net, free and clear. Please signify your agreement by signing below", to which is appended:

"I agree to the above. George W. Day."

Appellant complains that appellee sent no copy of this letter to him. Not only is there no evidence that Day withheld this information but there is also an entire absence of evidence that Tozzi in advancing this money depended upon the assurance or belief that his mortgage covered appellee's share of the crop. Thus proof is lacking of two essential elements of an equitable estoppel, viz.: That Tozzi was ignorant of the fact that appellee had limited its consent to the mortgage of the tenant's share of the crop, and further, that Tozzi in making the advances, relied upon any representations that the mortgage covered the appellee's 30% share of the crop. 10 Cal.Jur. § 14, p. 627, § 20, p. 636.

The evidence shows that $1500 had been advanced by Tozzi to Day before the mortgage was executed and there is no showing that in making advances Tozzi was relying on any other security than Day's share of the crop.

The questions of law heretofore passed upon make it unnecessary to consider the claim that the District Court committed error in refusing to reopen the cause, to permit defendant to introduce testimony to show that defendant entered upon the land and pursuant to the terms of said mortgage made additional advances to defendant Day. Even if this evidence was admitted the result would have to be the same.

Affirmed.