## In re FRANKLIN SAVING & LOAN CO.
### No. 11240.

District Court, E. D. Tennessee, S. D.
June 13, 1940.

Williams & Frierson, of Chattanooga, Tenn., for petitioners.

**586**

Wilkerson & Wilkerson, of Chattanooga, Tenn., for trustee.

DARR, District Judge.

This case is before the court to review an order of the referee denying petitioner's claim as a priority, and fixing the total claim at $4,400.

The facts of the controversy are as stipulated and these facts and the claim of the petitioner are clearly stated in her petition to review, which are as follows:

"It is admitted that the stock in question belonged to petitioner and the Referee had found, upon the uncontroverted testimony of petitioner and her two sisters, that the bankrupt 'obtained possession of the stock under fraudulent representations and carried it away over the protest and demand for its return by the petitioner'.

"The testimony of the three witnesses fully supports this finding. An agent of the bankrupt called at the home of the three sisters and endeavored to induce petitioner to let the bankrupt sell this stock and invest the proceeds in its certificates of indebtedness by falsely representing the solvency and strength of the bankrupt and also falsely representing that it could sell the stock for $4,400 which was considerably more than the then market price. Failing in this, the agent took the stock certificates, which bore assignments in blank, away with him, as found by the referee. A little later, claiming to have sold the stock for $4,400, he tendered the bankrupt's certificate of indebtedness for that amount which, as the referee has found, petitioner declined to accept. Still later, the agent and bankrupt's president, admitting that the stock had not been sold, promised to return it.

"All the other facts have been stipulated and the referee has adopted the stipulation as his findings of fact. It thus appears that:

"(1) The bankrupt pledged this stock, together with some of its own notes, to a bank at Athens. And, when the receiver was appointed, that bank held the stock and some $7,000 of notes belonging to the bankrupt, all of which was security for the same indebtedness.

"(2) For a considerable time, collections were made on the pledged notes and credited on the indebtedness. But, when the indebtedness had, in this way, been reduced to $3745.26, petitioner's stock was sold and $4945.40 realized. Out of this, the balance of the indebtedness was paid and the remainder—$1,200.14—paid to the trustee and 37 of the pledged notes, which belonged to the bankrupt, were released to the trustee."

The first question to be determined is fixing the amount of the petitioner's claim.

The referee has decided that the bankrupt converted the petitioner's stock and that its value would be as of the time of the conversion.

The referee would be correct in actions of trover under ordinary conditions. But if the property involved is of fluctuating value, the rule announced by the referee is not correct. Cf. Hedges v. Burke, 147 Tenn. 247, 247 S.W. 91; Clark v. Simpson, 1 Tenn.App. 397.

And where property is pledged the conversion is not consummated until sale of the pledged property and value to be fixed as of the time of the sale. Holston Nat. Bank v. Wood, 125 Tenn. 6, 9–13, 140 S. W. 31.

The proceedings in this case are not in the nature of an action of trover, but are brought to pursue the very property converted, either in its original form or some other form. It is brought to set up a trust.

It is generally understood that trover is not the exclusive remedy for a wrongful conversion. Cf. Seals v. Cummings, 8 Humph., Tenn., 442.

It is my judgment that in law, and certainly in equity, the petitioner is entitled to have the value of her claim fixed at the amount received therefor, which enhanced the value of the bankrupt's estate to this extent. The sum so received was $4945.40.

The referee has properly concluded that the petitioner's stock was a trust in the hands of the bankrupt.

Where there is insolvency, a trust fund is a prior claim if it can be identified, even though it may change in form or species while held by the trustee. Hawthorne v. Brown, 3 Sneed, Tenn., 462; Moffitt v. McDonald, 11 Humph., Tenn., 457; Turner v. Petigrew, 6 Humph., Tenn., 438; McDowell v. McDowell, 144 Tenn. 452, 234 S.W. 319, 18 A.L.R. 623; State ex rel. v. Bank of Bristol, 165 Tenn. 461, 55 S.W.2d 771; State ex rel. v. Bank of Bristol, 166 Tenn. 581, 64 S.W.2d 22;

State ex rel. v. Thomas W. Wrenne & Co., 170 Tenn. 131, 92 S.W.2d 416.

If there is any identified trust fund in this case, the same did not come into the hands of the receiver or trustee because it was no part of the estate. In re Steele-Smith Dry Goods Co., D.C.Ala., 298 F. 812; In re Brainard Hotel Co., 2 Cir., 75 F.2d 481; In re Gubelman, 2 Cir., 10 F.2d 926, certiorari granted Borland v. Latzko, 271 U.S. 654, 46 S.Ct. 484, 70 L.Ed. 1134, and Latzko v. Borland, 271 U.S. 654, 46 S.Ct. 484, 70 L.Ed. 1134, and modified on other grounds Latzko v. Equitable Trust Co. of New York, 275 U.S. 254, 48 S.Ct. 60, 72 L.Ed. 267.

If there is any trust property identified, the trustee has assumed charge of it and is holding it as a trustee ex maleficio, and the suit for reclamation herein brought is proper. In re Gubelman et al., 2 Cir., 10 F.2d 926–935.

The referee was of the opinion that the trust fund in this case has not been identified because the trust property had been pledged along with other property, and thereafter sold. The referee is of this opinion even though a portion of the fund derived from the sale of the stock came back to the trustee, and even though there was other security remaining when the stock was sold.

The referee's conclusions are based in the main upon the case of McDowell v. McDowell, 144 Tenn. 452, 234 S.W. 319, 320, 18 A.L.R. 623, in which a person hypothecated ten bonds for a loan of $10,000. The pledgor died leaving an insolvent estate. The bonds were sold for $7,000 and held to apply on the loan. Other persons claimed to own a portion of the bonds and undertook to set up a trust in the amount of their interest. The court declined this on the theory that the effort to set up the trust amounted to an undertaking to impress the general fund of the estate.

I think erroneous conclusions arose by failing to apply the announcements made to the facts in that particular case.

The court said in that case that there could be no recovery of interest in the bonds in species as a matter of course, "for the bank acquired the whole of said bonds as an innocent purchaser for value". It is quite evident that the court did not mean to say that the pledging of the bonds transferred the "whole" interest thereto. The "whole" interest was gone when it was necessary to sell the bonds to cover the debt. A pledge is simply a security and the pledgeor is entitled to the hypothecated property subject to the lien of the pledgee.

Again the court said in this McDowell case, which influenced the referee's decision: "No effort is made to trace the proceeds of the note to which McDowell attached these bonds as collateral security. Whether the money thus obtained was used to pay debts, or whether it came into his general estate, does not appear. If it came into his estate, it is not followed into any assets now in the hands of his executrix. So far as the record shows, the amount realized on said note was mingled with McDowell's assets generally and cannot now be distinguished."

It is evident that the court reasoned this way because the amount of bonds pledged was necessary to pay the debt secured thereby. There was no other property pledged and there was no residue left after the payment of the debt. It is not necessary to try to follow trust property into money loaned by reason of a pledge thereof, if the trust property is not used in payment of the loan, or necessary to be used in the payment of the loan.

In other words, the court in the McDowell case was going one step further in suggesting a way to follow trust property than is necessary in the case at bar.

Certainly the court did not mean to say that when property was pledged for a loan, that thereupon, nothing else appearing, the amount of the loan represented the amount of the trust property. If this were true, the trust property could be wrongfully pledged for a loan, the money received by the pledgeor and mingled with general fund, the pledge redeemed by payment, and the pledgee become insolvent, then the trust property would not be available even though it were actually in the hands of the pledgeor. It is evident that such a result would be unjust, not to say absurd.

The material and controlling distinction between the McDowell case and the case at bar is that in the McDowell case the pledged trust property was necessarily consumed in the payment of the debt and in the case at bar the pledged property was not necessary to be consumed in the payment of the debt.

It is my judgment that at the time of the bankruptcy, this stock being pledged

for a loan of the bankrupt, was the property of the petitioner, subject only to the lien of the Athens bank to secure the loan. This was also the situation when the petition in this case was filed on January 9, 1939. This property did not belong to the bankrupt and did not come into the hands of the receiver or trustee as a matter of law.

Having so identified her trust fund at the times indicated, the petitioner is entitled to recover all she can subject only to the lien of the Athens bank. That is, the stock belonging to petitioner, being no part of the bankrupt's property, results in a situation of adjusting the rights between the Athens bank and the petitioner. Even though the stock belonged to petitioner, the bank had obtained a superior right by reason of the rules of the negotiable instrument laws.

My judgment is that petitioner's rights entitle her to the residue of the sum received from the sale of this stock and turned back to the trustee, which amount is $1,200.14, and that she is further entitled to be subrogated to the right of the lien that the Athens bank had on the other 37 notes had the bank sold these notes first and protected petitioner's stock. Gwynne v. Estes, 14 Lea, Tenn., 662, 666–670.

The balance, adjudging the whole claim at $4,945.40 will be a general claim against the bankrupt's estate.

Order accordingly.