ROBERT L. LEACH, State Superintendent of Banking, Appellee,
v. FARMERS SAVINGS BANK OF HAMBURG, Appellee, et al.,
Appellants.

APRIL 5, 1927.

SUPPLEMENTAL OPINION JANUARY 20, 1928.

*Thornell, Thornell & Adams,* for appellants.

*Ben J. Gibson,* Attorney-general, and *W. E. Mitchell,* for
Robert L. Leach, Appellee.

ALBERT, J.—On the 11th day of January, 1921, one John Burkhiser died intestate, and on the 26th of January following, the Farmers Savings Bank of Hamburg was appointed, and qualified as, administrator of said bank, and filed proper bond, as required by law. As such administrator, it collected and paid out various sums of money. On December 19, 1924, the bank closed its doors, and was placed in the hands of an examiner of the state banking department. On February 2, 1925, a receiver was appointed for said bank; and the bank, as administrator of the estate of Burkhiser, had on hand, at the date of the closing, $6,604.70, subject to an offset of $400 for administrator's fees then due, for which claim was filed. Carl M. Adams was appointed special administrator of the estate of Burkhiser, deceased, and the heirs of the Burkhiser estate intervened, by proper pleading, and as such, request an order by the court allowing said claim as a preferred claim against the assets in the hands of the receiver. The district court allowed the claim as a depositor's claim, but refused a preference; hence this appeal.

The Farmers Savings Bank of Hamburg is a corporate bank, organized under the laws of the state of Iowa. The bank was insolvent when it closed its doors, but had on hand in its vaults in cash the sum of $7,400.50, and on deposit with its correspondent banks the sum of approximately $3,000, which was later turned into the hands of the receiver. The last money belonging to the Burkhiser estate received by the bank, as administrator, was in December, 1923. Under the record in this case, from the time this estate opened until the receiver took charge of the bank, the cash assets of the bank at no time were lower than approximately $10,000. Final distribution has never been made by the administrator, and there is no dispute as to the amount that is in the hands of said bank as administrator. It is admitted that the officers of the bank knew that the bank was administrator of the Burkhiser estate, and of the funds arising from said estate which came into the hands of the bank, and kept an account under the head of "Burkhiser Estate." The funds were commingled with the other funds and property of the bank, and it is claimed that the heirs agreed that the bank might use the money belonging to this estate in its business; but the record is

wholly barren of any evidence tending to show any such agreement.

It seems to be settled law that an executor or administrator is not only the personal representative of the decedent, but is also, to a very great extent, the representative of the creditors and of the legatees and distributees. He occupies a position of trust with respect to those who are interested in the estate, and is a trustee, in the broadest sense, though not in the general acceptation of the term. 23 Corpus Juris 1170, Section 387; 2 Woerner's American Law of Administration (2d Ed.) *798; *Langan Realty Co. v. Dixon*, 46 S. D. 170 (191 N. W. 444); *Pierce, v. Holzer*, 65 Mich. 263 (32 N. W. 431); *Bettendorf v. Bettendorf*, 190 Iowa 83; *Lampman v. Lampman*, 118 Iowa 140; *Herriott v. Potter*, 115 Iowa 648. That this thought was in the contemplation of the legislature at the time of the passage of the legislation hereinafter to be referred to, is shown by a reading of Chapter 152, Acts of the Thirty-fifth General Assembly (Sections 1889-d to 1889-n, inclusive, Code Supplement, 1913), wherein these estates are at several places referred to as "trusts." We are, therefore, safe in starting the discussion of the matters herein involved by saying that the assets of this Burkhiser estate that came into the possession of this bank as such administrator constituted a trust fund. It follows that, when such funds belonging to said estate went into the possession of said bank, it necessarily increased the assets of said bank. The assets of this trust estate having thus been traced into the hands of the bank, and the assets of the bank having been thus increased at the time the fund went into the bank, the next question is whether or not the assets thus augmented passed into the hands of the receiver. As heretofore stated, since the opening of the Burkhiser estate and the bank's taking charge thereof as administrator, there has been no time in the history of the bank, according to the record, when the actual cash assets of the bank were less than the amount shown to be in the hands of the administrator at the time the receiver took charge. In *In re Receivership of First State, Bank*, 152 Iowa 724, *Whitcomb v. Carpenter*, 134 Iowa 227, and *Cable v. Iowa State Sav. Bank*, 197 Iowa 393, this court laid down the rule that, where there is a common fund in which there is a trust fund, and the bank continues to draw from said fund, it is presumed that they will draw their own

fund and preserve the trust fund. This is also stated, in substance, in *Independent Dist. v. King*, 80 Iowa 497, and seems to be the general rule elsewhere. The fact, therefore, that this money from this estate was mingled with the general fund of the bank will not defeat the recovery of the trust fund, so long as there was money enough in the bank to pay the trust fund; and it is the right of the *cestui que trust* to recover said fund from the receiver of the insolvent bank when he has shown these facts.

Chapter 152 of Acts of the Thirty-fifth General Assembly provides, among other matters, that:

"Trust companies, state and saving banks * * * shall have power * * *

"2. To be appointed * * * guardian, administrator, or other trustee by any court of record in this state * * * .

"Sec. 3. All property, real or personal, received in trust by any such corporation exercising the powers granted by this act, shall be kept separate from such funds or property which may be in the possession of such corporation, and shall not be liable for the debts or obligations of such corporation."

It is in pursuance of these sections of the statute that the Farmers Savings Bank of Hamburg was appointed and qualified as administrator of said estate. Since it came into the possession of this property by virtue of its appointment and the provisions of this statute, its acts and conduct in relation to the property must be controlled by the provisions of the statute. It is made the duty of the bank, under the aforesaid Section 3 (now Section 9290 of the Code of 1924), to keep separate from the corporate funds or property of the corporation the real and personal property so received. We do not conceive that it was the intent of the legislature, in enacting the provision, that the fund received from an estate under these circumstances was to be kept apart from the funds of the corporation in such sense that the identical money that came to the administrator was to be at all times kept in specie. Light is thrown on the purpose of this section of the Code by the later section above referred to, Section 9305, Code of 1924, wherein it is directed that these funds are not to be considered a part of the assets of the bank, and, while they are to be listed and reported as such to the superintendent of banking, they are not included in the bank's state-

ment, and such list is not to be made public. But, if we should be in error in this construction of the statute, the last clause of this section is decisive of the question before us, wherein it is provided that the funds thus in the hands of the bank as administrator ''shall not be liable for the debts or obligations of such corporation.'' We do not think that this section needs construction, as it is evident that the very purpose and intent of the legislature were that, when such funds once came into the hands of a bank as administrator, they could not be used for payment of debts or obligations of the bank.

It is no answer to this proposition to say that an administrator bank could deposit this fund in some other reputable bank. The section uses the term ''all property, real or personal,'' received by the bank,—which is broad enough to include, and undoubtedly does include, any kind of property, whether it be money or any other real or personal property. Money is personal property. Nor is the fact that an account was run in the bank in the name of this estate in any way persuasive. The bank, like any other administrator, should keep an account of the estate and moneys received and paid out. Every administrator should do this, and the fact that this bank may have kept an account in the name of this estate is not, to our minds, very material. The books of the bank, so far as material, were introduced in evidence. They show many items of credit to this estate. The law requires all administrators to dispose of the property of the estate for cash. Every officer is presumed to perform his legal duty. Hence, in the absence of all evidence, it is presumed that all funds coming into his hands were cash.

Holding, as we do, that these funds went into the bank, and thus augmented the assets of the bank at the time they were paid in, and that there was an equivalent amount in the hands of the receiver, we see no equitable reason why this fund should be used for the benefit of the depositors of the bank. They can be taken from the assets in the hands of the receiver without in any way prejudicing the rights of the depositors. It has been traced into the bank, and, under the showing herein, the presumption is that it was retained by the bank as a trust fund, which passed to the receiver, and we so hold it to be. The special administrator is entitled to an order herein in accord with

this holding, and his claim against the estate is allowed in the amount claimed, less the $400 to the bank as an agreed administrator's fee.—*Reversed.*

FAVILLE, DE GRAFF, VERMILION, and MORLING, JJ., concur.

EVANS, C. J., dissents.

STEVENS, J., takes no part.

### Supplemental Opinion.

It appears that there are other creditors who claim preference herein, and it is ordered that, if there be insufficient funds to pay all preferred claims, then they shall share therein *pro rata.*

It is further ordered that the amount of the assets of said bank in which this claimant is entitled to participate will be the lowest amount of cash on hand in said bank at any time between the time these deposits were made and the time the bank went into the hands of the receiver.

The original opinion is adhered to, and the petition for rehearing overruled, with this supplement.