STATE OF TENNESSEE *ex rel.*, D. D. ROBERTSON, SUPT. OF BANKS, COMPLAINANT, APPELLANT, *v.* BANK OF BRISTOL, DEFENDANT, APPELLEE.*

(*Knoxville*, September Term, 1932.)

Opinion filed January 10, 1933.

*As to ward's title to property in possession of guardian, see 12 R. C. L., 1123; R. C. L. Perm. Supp., p. 3264.

On duty of guardian as to money of ward, see annotation in 44 L. R. A. (N. S.), 948; 12 R. C. L., 1132.

As to following trust funds, see annotation in 26 A. L. R., 11, 35 A. L. R., 747; 55 A. L. R., 1275; 3 R. C. L., 552 et seq; R. C. L. Perm. Supp., p. 837; R. C. L. Pocket Part, title "Banks," Sec. 180.

CURTIN & HAYNES, and KEEBLER & WOOLSEY, for complainant, appellant.

CALDWELL, BROWN & O'DELL, for defendant, appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The main case is a proceedings by the superintendent of banks under section 5965, *et seq.*, of the Code, under which the superintendent was appointed receiver for the

Bank of Bristol and is winding up its affairs as an insolvent institution. This appeal is by the superintendent from orders of the chancellor upon three intervening petitions allowing the intervenors priority in the distribution of the bank's assets.

Demurrers were filed to all the petitions by the superintendent of banks and the demurrers overruled. We first consider the petition of

## MRS. BERT MUSICK

It appears that Bert Musick, a soldier in the late war, was disabled in service and later became insane. His wife, the petitioner, was appointed his guardian. There had accumulated in her hands as guardian $814 paid to her by the United States Government for the benefit of Bert Musick under the World War Veteran Acts of Congress. U. S. C., Title 38, sec. 421, *et seq.*

The theory of the petitioner is that in receiving and holding this money for the benefit of the mental incompetent she was a mere agency or instrumentality of the United States Government; that the fund due her from the insolvent bank is due to her as a government agent; and that, as such agent, she is accordingly entitled to priority of payment. The chancellor took this view and his conclusion is sustained by two cases from Nebraska, *State ex rel. Spillman* v. *First State Bank,* 121 Neb., 515; *State ex rel. Sorensen* v. *Security Bank,* 121 Neb., 521, and one case from the Springfield (Mo.) Court of Appeals, *Butler* v. *Cantley,* 47 S. W. (2d), 258. These decisions rest upon their construction of Federal statutes.

U. S. C., Title 38, sec. 450, provides:

"Where any payment under this chapter is to be made to a minor, other than a person in the military or naval forces of the United States, or to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the State or residence of claimant, or is otherwise legally vested with responsibility or care of the claimant or his estate. . . . And provided further, That the director, in his discretion, may suspend such payments to any such guardian, curator, conservator, or other person who shall neglect or refuse, after reasonable notice, to render an account to the director from time to time showing the application of such payments for the benefit of such minor or incompetent beneficiary."

U. S. C., Title 38, sec. 556, provides:

"Every guardian, curator, conservator, committee, or person legally vested with the responsibility or care of the claimant or his estate, having charge and custody in a fiduciary capacity of money paid, under the War Risk Insurance Act as amended, or under the provisions of this chapter, for the benefit of any minor or incompetent claimant, who shall embezzle the same in violation of his trust or fraudulently convert the same to his own use, shall be punished by fine not exceeding $2,000 or imprisonment at hard labor for a term not exceeding five years, or both."

U. S. C., Title 38, sec. 454, provides:

"The compensation, insurance and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an

award is made under Parts II, III, or IV; and shall be exempt from all taxation."

U. S. C., Title 38, sec. 451 and sec. 514, provides that in cases where the estate of a deceased beneficiary of the legislation would escheat, the funds shall not go to the State but to the United States.

U. S. C., Title 31, sec. 191, is in these words:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The reasoning of the Nebraska court is that, under the Federal statutes quoted, the guardian in the first case cited and the administrator in the second case cited, hold the money for a certain definite purpose only; that if such purpose fails, the money goes back to the United States. The argument is that the guardian or administrator is a mere conduit or channel through which the money passes; that it is the money of the United States until it reaches the statutory beneficiaries. It is thought that the provision of the statute by which the guardian or other trustee may be required to render an account to the government from time to time as to his application of the funds in his hands evinces a reserved control of this fund by the government; that the provision for criminal proceedings against an unfaithful guardian or

other trustee indicates that the government still retains control of the fund; and that the provision for an escheat to the government, instead of an escheat to the State, is of the same tendency. In short that the money in the hands of a guardian or other such trustee is in his hands as a government agent, until the money actually reaches the beneficiary or is applied to the use of the beneficiary. Consequently when the agent makes a deposit in bank, the debt of the bank to him is a debt to him as agent of the government—a debt to the government, and entitled to priority of payment.

The Missouri case refers to the Nebraska cases, the Federal statutes above set out, and its reasoning is along similar lines.

In the Nebraska and Missouri cases and in the brief of counsel for petitioners reference is made to a number of decisions based upon U. S. C., Title 38, sec. 454, quoted above, with reference to the assignability and exempt status of compensation, insurance, and maintenance and support allowances. We think these decisions may be left out of consideration. With all due respect to counsel and to the courts mentioned, a case like the one before us involves no effort on the part of anyone to seize or lay hold of money appropriated by the government for such beneficiaries. On the contrary, the effort seems to be one in behalf of the beneficiary to seize or lay hold of money, largely at least, belonging to somebody else. The money of the beneficiary was deposited in bank, lawfully we presume, and there mingled by the banker with the money of other persons. The identity of the fund had been lost when the receiver took over the bank. There was no trust relation between the bank and the guardian of the beneficiary. The relation

between the bank and the guardian was the ordinary relation of banker and general depositor—of debtor and creditor. *Conquest* v. *Broadway National Bank,* 134 Tenn., 17; *Marine Bank of Chicago* v. *Fulton County Bank,* 2 Wall., 252, 17 L. Ed., 785. Unless, therefore, the money deposited by the guardian can be treated as government money and priority of payment claimed under U. S. C., Title 31, sec. 191, we see no basis whatever for a preference.

The language of the statute is that "the debts due to the United States shall be first satisfied." Is this debt of the insolvent bank to the guardian of the incompetent beneficiary a debt due to the United States? It seems to us that such proposition is not maintainable.

■ Conceding that the guardian is·in a sense a government agent, he is also the agent of the beneficiary of the fund. His duties to the government consist in applying the fund for. the benefit of the minor and in reporting to the government from time to time as to such application. The government does not undertake to regulate the manner of the application of such fund to the beneficiary's use. So far as the Federal statutes are concerned, the guardian may spend the money directly for the beneficiary's comfort, invest the money to provide an income for the beneficiary, or deposit the money in bank to meet the future needs of the beneficiary. In making the deposit in bank, therefore, this guardian was acting as agent of the incompetent beneficiary and not as agent of the government.

■ It seems a mistake to us to say that the government retained any title to or interest in this fund after it was paid to the guardian. The government retained control of the administration of the fund, to a limited

extent, and made a provision with reference to escheat. Such provisions are sustained because the guardian was not bound to accept the fund, and if he did accept, he took on the terms prescribed by the Act of Congress. *United States* v. *Hall,* 98 U. S., 343, 25 L. Ed., 180. The State likewise regulates the administration of trust funds but it has never been contended that such regulations could be regarded as a declaration of interest on the part of the State in these funds. It is settled in this jurisdiction and elsewhere that in the relation of guardian and ward, the title to the property is in the ward and that the possession of the guardian is the possession of the ward and will inure to the ward's benefit under statutes of limitation. *Williams* v. *Walton,* 16 Tenn. (8 Yerg.), 387; *Davis* v. *Mitchell,* 13 Tenn. (5 Yerg.), 281. Such is the rule elsewhere. 28 C. J., 1128, 12 R. C. L., 1123.

We think the cases relating to deposits made by an Indian agent, approved in *Browmwell* v. *United States F. & G. Co.,* 269 U. S., 483, 70 L. Ed., 368, are not in point. An Indian agent is a government officer and funds deposited to his credit stand on the same basis as funds deposited to the credit of the United States Marshall, paymaster of the Army, or other disbursing instrumentality of the government.

We are of opinion that upon payment of the money involved to the guardian of the insane veteran title to the money passed; that the government retained no claim to the money except in case of an escheat; that it merely reserved the right to enforce the fidelity of the guardian to his trust.

The Connecticut court has reached the same conclusion as we do in a like case upon reasoning somewhat

 

similar. *Shippee Bank Commissioner* v. *Commercial Trust Co.* (Conn.), 161 Atl., 775.

We accordingly conclude that the chancellor was in error in his disposition of this matter.

## DORA HICKS McCRACKINE

 This petitioner is the mother of one Joseph D. McCrackine, who served with the United States Army in France, and died from injuries there received, shortly after his return to this country. McCrackine had one of the government insurance policies and the petitioner was the beneficiary named therein. Upon McCrackine's death the government made a settlement with petitioner by which she was to receive monthly payments of $57.50 each. Checks for these monthly payments are sent to her directly. She avers that she is an ignorant woman and made an arrangement with one George C. Furro to look after her affairs. She therefore turned her checks over to Furro and he deposited them in the bank to the credit of "George C. Furro, Trustee, for Mrs. Dora Hicks McCrackine." Furro would disburse this money for the benefit of Mrs. McCrackine and at the time of the insolvency of the bank there was a balance on this account $487.07.

We are unable to see any basis whatever for giving preference to this claim. The argument and authorities made to sustain the priority of the claim just before considered are not at all in point here. Furro is in no sense a government agent but was an agent selected by Mrs. McCrackine herself. The checks were sent to her and she turned them over to Furro, under an agreement between herself and Furro, and he handled the money

for her benefit under her own appointment. Plainly therefore there can be no justification for regarding this deposit as a government deposit, entitled to priority of payment, and the order of the chancellor so holding is disapproved.

## J. W. and HELEN JONES

These petitioners are infants suing by their next friend. Their father, a World War veteran, died in 1929. The Bank of Bristol qualified as guardian for petitioners and as such guardian was paid by the United States Government for the benefit of petitioners the sum of $1577 representing the proceeds of an adjusted service certificate.

The bank mingled this fund with its other deposits. Prior to insolvency, it had paid out a portion of the fund for the support of petitioners, but when the bank closed it was properly chargeable as guardian of petitioners with the sum of $728.44. The petitioners aver that at no time did the cash reserve of this bank fall below the amount due petitioners or below the total amount of trust funds held by the bank.

This case differs from the other two in that there was a trust relation here between the bank and these petitioners. The bank was their guardian, should have kept their money separate, and it was a breach of trust for the bank to mingle these funds with its general deposits.

Our earlier cases were to the effect that money had no earmarks and that it could not be followed when a trustee mingled his own money with that of a *cestui que trust*. This was noted in *Bragg* v. *Osborne,* 147 Tenn., 382, but in the latter case we intimated that we

were prepared to depart from these cases and to follow the rule of *Knatchbull* v. *Hallett,* L. R., 13, Ch. Div., 968, when a proper occasion arose. We think this is the time and place to take the departure.

The rule in *Knatchbull* v. *Hallett,* as stated in *Bragg* v. *Osborne,* is that "where a trustee blends in a bank account his own money with the beneficiary's, from which account the trustee subsequently withdraws funds, the withdrawals will be presumed to be the trustee's own funds, which he had a right to withdraw, and the balance will be presumed to include the beneficiary's funds, which the trustee had no right to use." As we stated in *Bragg* v. *Osborne,* this rule has been approved by the Supreme Court of the United States in *Central National Bank* v. *Connecticutt Mutual Life Insurance Co.,* 104 U. S., 54, 26 L. Ed., 693, and has been rather generally followed in this country. See cases collected in Notes 26 A. L. R., 11, 55 A. L. R., 1275, and 39 Cyc., 640. Indeed this court formerly applied the same principle in *Brocchus* v. *Morgan,* 3 Shan. Cas., 761.

█ Upon the authorities stated, we conclude that the chancellor properly awarded preferential payment to the claim of these petitioners.

Reversed as to Musick and McCrackine claims. Affirmed as to Jones claim.

NOTE: The cases above referred to construing U. S. C., Title 38, section 454, concerning the exempt status of compensation, insurance, and maintenance and support allowances are *Payne* v. *Jordan,* 152 Ga., 367, 110 S. E., 4; *Watkins* v. *Hall,* 107 W. Va., 202, 147 S. E., 876; *Wilson* v. *Sawyers* (Ark.), 6 S. W. (2d), 825; *Perrydore* v. *Hester,* 215 Ala., 268, 110 So., 403; *Tax Commission of Ohio* v. *Rife* (Ohio), 162 N. E., 390; *In re Geier,* 155 La., 167, 99 So., 26, 32 A. L. R., 353.