STATE *ex rel. v.* BANK OF BRISTOL (EARLY & DANIEL CO., Intervener).

(*Knoxville,* September Term, 1933.)

Opinion filed Nov. 18, 1933.

CALDWELL, BROWN & O'DELL, for State *ex rel.*

CURTIN & HAYNES, for Bank of Bristol.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The Bank of Bristol is being wound up as an insolvent institution in this cause, and the appeal by the receiver before us is from an order of the chancellor awarding priority to a claim for intervener, the Early & Daniel Company.

This intervening petitioner is a grain and hay dealer located at Cincinnati. Within the last few days of the operation of the Bank of Bristol, intervener made three shipments to parties in the Bristol section, sending three

drafts with bills of lading, covering each shipment, to said bank for collection. The consignees were customers of the Bank of Bristol, or its Bluff City branch, and paid said drafts by checks on the main bank or on the branch.

The bank undertook to remit the proceeds of two of these drafts by cashier's checks, drawn on itself, payable to intervener's order. The receiver, however, took charge of the bank before clearance of the two cashier's checks was completed, and said checks were charged back to intervener by its bank. No remittance was undertaken by the Bristol bank on account of the third draft.

On the face of each of the drafts the following legend appeared:

"This draft is a cash item and is not to be treated as a deposit. The funds obtained thru its collection are to be accounted for to drawer, and are not to be commingled with the other funds of collecting bank."

Likewise there was a rider attached to each draft containing these instructions:

"To Collecting Bank:

"Documents accompanying this draft are not to be delivered to drawee or consignee until this draft has been paid in cash. Checks, drafts and other evidences of indebtedness, whether drawn by the drawee named therein, or by banks, will not be received in payment. Proceeds of this draft will be collected in cash and remitted forthwith to The Early & Daniel Company and will not be used either directly or indirectly to pay or offset any claim or indebtedness for or against any person, firm, or corporation (including banks) receiving, forwarding, endorsing, or collecting the same. Said proceeds remain the property of The Early & Daniel Company and constitute a trust fund in its favor, and a preferred claim

upon the assets of all persons, firms and corporations, including banks receiving, forwarding, endorsing, or collecting this draft.''

The language printed on each of the drafts and on the rider thereto attached made plain the intention of the drawer that the proceeds of the draft was not intended as a deposit, was not to be commingled with the bank's funds, but was to be treated as a trust fund and remain the property of the intervener.

As to remittance, the provisions were that the ''funds are to be accounted for to the drawer'' and ''proceeds of this draft will be collected in cash and remitted forthwith.'' Literally a shipment of the proceeds of the draft in currency, as well as a collection thereof in the same medium, by the collecting bank. Such a practice, however, is altogether unusual in commercial transactions of this nature, and the bank never followed, nor did the drawer require, any such procedure.

It appears from the stipulation that the Bank of Bristol had handled collections in its vicinity for the intervening petitioner over a period of four years just preceding the receivership. During that time intervener sent to this bank for collection seventy-two drafts covering shipments of merchandise to persons in this territory. All these drafts were identical with the three drafts here in suit. All of them bore the same legend on their faces, and to all of them riders were attached exactly like the riders attached to these three. In every case the Bank of Bristol remitted the proceeds collected on these drafts by its cashier's check. In every case such check was accepted as a satisfactory settlement, and no complaint was ever made.

Such a uniform and protracted course of dealings be-

tween the parties cannot be treated as anything else but an interpretation of the instructions, contained in these drafts and their riders, as authorizing remittances by the collecting bank by its cashier's checks.

Such being the situation, the claim upon the two drafts for which cashier's checks were forwarded must be denied priority on authority of *Akin* v. *Jones*, 93 Tenn., 353, 27 S. W., 669, 671, 25 L. R. A., 523, 42 Am. St. Rep., 921, and *Sayles* v. *Cox*, 95 Tenn., 579, 32 S. W., 626, 627, 32 L. R. A., 715, 49 Am. St. Rep., 940.

In *Akin* v. *Jones, supra,* the drawer directed the collecting bank to send them its check on New York in payment of the proceeds of the draft. The court said that this "was virtually an express direction not to send the identical moneys collected, nor to hold them separate for Manier & Co. [the drawer], but was equivalent to an agreement that the bank might use the money collected, and pay Manier & Co. by its check on New York. Any agreement or understanding or course of dealing whereby the bank is to use the identical moneys collected, and substitute its own obligation in its stead, destroys all idea of a trust."

In *Sayles* v. *Cox, supra,* the direction was to collect and to "forward draft to me for balance, less your fee." The court said this language clearly implied that the bank, after collection, should retain its charges, and forward the balance, in its own draft, to the sender of the note. The court followed and approved *Akin* v. *Jones,* denying priority to the claimant in the distribution of the assets of the insolvent bank.

That a cashier's check is nothing but a general, not a preferred, obligation of the bank, is held in *Louisville & N. R. Co.* v. *Federal Reserve Bank,* 157 Tenn., 497, 10 S.

W. (2d), 683, 61 A. L. R., 954, and *Illinois Central R. Co.*
v. *Peoples Bank,* 9 Tenn. App., 39.

We recognize the fact that *Akin* v. *Jones* and *Sayles*
v. *Cox* are not in harmony with the decisions of all the
courts. The rule announced in these cases, however, has
been long enforced in this jurisdiction, is enforced in
other jurisdictions, and we are not at liberty to depart
therefrom. In a note, 73 A. L. R., 78, the editor says:

"Even in those jurisdictions—of which Kansas is one
—wherein has been adopted the trust theory with respect
to collections made of items forwarded to a bank for
collection and remittance, it is generally held that all
idea of a trust is destroyed where the owner of the col-
lection item requests and accepts from the collecting bank
its own obligation, or where there is an agreement or
understanding that the bank's own obligations shall be
substituted for the moneys collected."

 As to the third draft, where no attempt was
made to remit its proceeds prior to the receivership, the
case is different.

By the terms of the instrument under which this col-
lection was made, the proceeds came into the hands of
the bank as the agent or trustee of the intervening peti-
tioner. The latter did not surrender this status as to
the proceeds of the third draft and become a creditor by
the acceptance of any general obligation of the bank.

Prior to our former decision in this case upon the in-
tervention of Jones (see 165 Tenn., 461, 471, 55 S. W.
(2d), 771), the bank having collected and commingled
the proceeds of the third draft with its own funds, the
intervener would have been repelled as the claimant of
a trust fund, on the theory that it was impossible to
identify the *res* of the trust. In our former decision,

however, we adopted the rule of *Knatchbull* v. *Hallett,* L. R., 13, Ch. Div., 968. So here, the funds in the bank and coming into the hands of the receiver, at all times exceeding the amount collected on the third draft and the amount of other trust funds, it will be presumed that the proceeds of the third draft have not been dissipated and are included in the funds that passed to the receiver. This being true, the intervener is entitled to priority of payment as to the third draft.

There is a conflict in the decisions as to whether a preference exists in the assets of an insolvent bank when that bank makes a collection, of a draft for instance, by accepting the check of the drawee drawn against his deposit in such bank, or by charging the account of the drawee in said bank with the amount of the draft, he having sufficient funds on deposit. The cases are collected in notes 24 A. L. R., 1152, 42 A. L. R., 754, 47 A. L. R., 761, 73 A. L. R., 66, 73.

Decisions of this court are that such a payment by check on the collecting bank is equivalent to a payment in money, even if the bank fails on the same day. *Howard & Co.* v. *Walker,* 92 Tenn., 452, 21 S. W., 897; *Sayles* v. *Cox, supra.*

The theory of the cases denying the preference is that such a payment does not augment the assets of the collecting bank; that there is no *res* to which a trust can attach. Those cases seem to concede that, if the depositor had gone to the window of the paying teller, obtained currency for his check, and then paid in that currency at the collection window in satisfaction of the draft, the trust and the preference would have existed. Other cases hold that all this would be but an idle ceremony and uphold the trust and the preference where the depositor's

check is taken directly in payment of the draft or his account is directly charged with the amount of the draft and the draft surrendered to him.

We prefer the latter view. Payment by check on the collecting bank, in this jurisdiction, being a good payment, so as to release the drawee, we think the drawer should be accorded reciprocal rights.

The decree of the chancellor will be modified as herein indicated. One-third of the costs of this intervention will be taxed to the receiver and two-thirds taxed to the intervening petitioner.