STATE *ex rel.* ROBERTSON *v.* BANK OF BRISTOL.

(*Knoxville*, September Term, 1933.)

Opinion filed Nov. 18, 1933.

BURROW & BURROW, for appellant.

CALDWELL, BROWN & O'DELL, for appellee.

J. D. BAUMGARDNER and WM. W. HAYNES, for Jay Baumgardner and J. N. Dunivin.

582

Mr. Justice McKinney delivered the opinion of the Court.

By the three petitions filed herein, preferential payments out of the assets of the insolvent Bank of Bristol are sought. The bank ceased to function and was placed in the hands of a receiver on April 28, 1932.

 Mrs. Martha Lou South, as guardian of her children, had on deposit in said bank at the time of her death on February 9, 1932, the sum of $2027.56. On April 15, 1932, the defendant bank qualified as guardian of said children. It failed to separate their funds from those of the bank, as it was its duty to do, and under the rule announced in this same case with respect to the claims of *J. W. and Helen Jones,* 165 Tenn., 461, 471, 55 S. W. (2d), 771, this is a preferred claim. If the fund had been deposited elsewhere and paid to the defendant on April 15, the two cases would be identical. In legal effect the bank, on said date, paid said fund to itself as guardian, and should have separated same from its general funds.

 The second petition was filed by J. N. Dunivin, as administrator with the will annexed of S. D. South, who died in December, 1929. The defendant bank qualified as the executor of Mr. South, and at the time when it ceased to be a going concern had a balance of $1,846.44, belonging to said estate. This trust fund, as in the other case, had never been separated from the general funds of the bank.

The third petition was filed by J. N. Dunivin, as administrator of the estate of Mrs. South. On February 19, 1932, the defendant bank qualified as her administrator, and had on hand when it closed its doors belonging to her estate, the sum of $1,934.95. In all three cases the

bank resigned its trusteeship, and petitioners were appointed as its successors.

The evidence shows that from the time the bank qualified as executor, administrator, and guardian, respectively, up until it was placed in the hands of a receiver, it had cash on hand in excess of these three claims, as well as other claims which had been allowed as preferences.

These last two claims fall within the rule announced in the first. In all three the bank occupied the position of trustee, and breached its trust by not separating these trust funds from its general funds. A well-reasoned case dealing with this question is that of *Leach* v. *Farmers' Sav. Bank*, 205 Iowa, 114, 213 N. W., 414, 415, 217 N. W., 437, 56 A. L. R., 801, 804-805, in which it is said:

"We are therefore safe in starting the discussion of the matters herein involved by saying that the assets of this Burkhiser estate, that came into the possession of this bank as such administrator, was a trust fund. It follows that, when such funds belonging to said estate went into the possession of said bank, it necessarily increased the assets of said bank. Having thus traced the assets of this trust estate into the hands of the bank, and its having increased the assets of the bank at the time the fund went into the bank, the next question is whether or not the assets thus augmented passed into the hands of the receiver. As heretofore stated, since the opening of the Burkhiser estate and the bank's taking charge thereof as administrator, there has been no time in the history of the bank, according to the record, when the actual cash assets of the bank were less than the amount shown to be in the hands of the administrator at the time the receiver took charge.

"In *Stilson* v. *First State Bank*, 152 Iowa, 724, 133 N.

W., 354; *Whitcomb* v. *Carpenter,* 134 Iowa, 227, 10 L. R. A. (N. S.), 928, 111 N. W., 825; *Cable* v. *Iowa State Sav. Bank,* 197 Iowa, 393, 31 A. L. R., 748, 194 N. W., 957, 197 N. W., 434, this court laid down the rule that, where there is a common fund in which there is a trust fund and the bank continues to draw from said fund, it is presumed that they will draw their own fund and preserve the trust fund. This is also stated, in substance, in *Independent Dist.* v. *King,* 80 Iowa, 497, 45 N. W., 908, and seems to be the general rule elsewhere. The fact, therefore, that this money from this estate was mingled with the general fund of the bank, will not defeat the recovery of the trust fund so long as there was money enough in the bank to pay the trust fund, and it is the right of the *cestui que trust* to recover said fund from the receiver of the insolvent bank when he has shown these facts."

The chancellor held that all three of these claims were preferred, and his decree will be affirmed.