STATE *ex rel.* ROBERTSON *v.* THOMAS W. WRENNE & CO.

*(Nashville,* December Term, 1935.)

Opinion filed April 4, 1936.

BASS, BERRY & SIMS, of Nashville, for appellant.

W. P. COOPER, of Nashville, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an appeal by the receiver of an insolvent bank, in process of liquidation in the chancery court, from a decree awarding to a group of claimants of trust funds placed with the bank in its capacity as guardian, executor, etc., priority over general depositors and other creditors. These trust funds aggregated some $37,000. The record indicates that, if and when these priorities are discharged and the costs of administration paid, the fund remaining for distribution will be so depleted that general depositors will receive around 5 per cent only of their deposits. The assignments of error in this court read as follows:

"1. The Chancellor erred in holding that the owners of uninvested trust funds held by Thos. W. Wrenne & Company at the time of its failure, which had been commingled together and with its own funds, were entitled to receive payment of the amount of their respective claims from the general assets of the bank in preference to general depositors and creditors.

"2. The Chancellor erred in holding that the claims of owners of uninvested trust funds in Thos. W. Wrenne

& Company, bear interest from the date of the appointment of the Receiver."

The decree of the chancellor broadly awarded priority payment of these trust claims from the assets of the insolvent bank as a whole, without distinction between cash, cash reserves, notes, bonds, mortgages, real estate, or other assets.

It appears from the stipulation of fact on which the case was heard that, when the bank closed its doors on the 17th day of March, 1933, it had in cash in its banking house $5,625.30 only and items in transit, collected by the receiver in due course, aggregating $1,930.35. It also had some $25,000 on deposit subject to check in various correspondent banks, but from these sources the receiver was able to collect $2,747.76 only, the balance remaining after indebtedness of the bank to these several correspondents had been charged against the accounts.

It must be conceded to be settled in Tennessee, since the decision in *State ex rel.* v. *Bank of Bristol,* 165 Tenn., 461, 55 S. W. (2d), 771, 774, that trust funds are entitled to preferential recognition in accordance with what is known as the *Knatchbull* v. *Hallett* rule. In that case GREEN, C. J., said:

"Our earlier cases were to the effect that money had no earmarks and that it could not be followed when a trustee mingled his own money with that of a *cestui que trust.* This was noted in *Bragg* v. *Osborn,* 147 Tenn. [381], 382, 248 S. W., 19, 20, but in the latter case we intimated that we were prepared to depart from these cases and to follow the rule of *Knatchbull* v. *Hallett,* L. R., 13 Ch. Div., 696, when a proper occasion arose. We think this is the time and place to take the departure.

"The rule in *Knatchbull* v. *Hallett,* as stated in *Bragg* v. *Osborn,* is that, 'where a trustee blends in a bank account his own money with the beneficiary's, from which account the trustee subsequently withdraws funds, the withdrawals will be presumed to be the trustee's own funds, which he had a right to withdraw, and the balance will be presumed to include the beneficiary's funds, which the trustee had no right to use.' As we stated in *Bragg* v. *Osborn,* this rule has been approved by the Supreme Court of the United States in *Central National Bank* v. *Connecticut Mutual Life Insurance Co.,* 104 U. S., 54, 26 L. Ed., 693, and has been rather generally followed in this country. See cases collected in notes 26 A. L. R., 11, 55 A. L. R., 1275, and 39 Cyc., 640. Indeed, this court formerly applied the same principle in *Brocchus* v. *Morgan,* 3 Shan. Cas. [667], 671.

"Upon the authorities stated, we conclude that the chancellor properly awarded preferential payment to the claim of these petitioners.

"Reversed as to Musick and McCrackine claims. Affirmed as to Jones claim."

It is the application of this rule to the particular facts shown by the stipulation in this case which is now for consideration. It is urged for the receiver that, in decreeing preferential payment in full to the trust fund claimants from the general assets of the insolvent bank, the learned chancellor has given the rule too broad an application; that preferential disbursement should be limited to (1) a sum no greater than the amount of cash in the actual possession of the bank on that day subsequent to its receipt of the trust funds on which the cash was at its lowest point, whether on the day the doors were closed or before; and (2) that in computing this

sum funds on deposit in correspondent banks, though subject to check, are not to be included.

We have no hesitation in holding that the general assets of the bank are not subject to be impressed with this broad preference; that this would extend the application of the rule beyond the scope of the principle upon which the preferential right rests. To the extent to which the blended funds have been withdrawn and appropriated by the trustee to uses or purposes of its own, or of others than the beneficiaries, that presumption essential to the doctrine involved is wholly wanting.

Consistently with the reason of the rule, it is only as to so much of the commingled fund as has never been withdrawn for application inconsistent with the trust that it can be said to have continued to be the fund of the trust.

We think it apparent that this logically essential limitation was in the mind of this court in applying the rule in *State ex rel.* v. *Bank of Bristol, supra,* and in the later case, similarly styled, reported in 166 Tenn., 581, 64 S. W. (2d), 22, in which the opinion was prepared by MR. JUSTICE McKINNEY. As an obvious predicate of the holding in the first case, the Chief Justice specifically recites in his statement of the issue that ''the petitioners aver that at no time did the cash reserve of this bank fall below the amount due petitioners or below the total amount of trust funds held by the bank.'' When proper emphasis is given this language, it is apparent that the writer had in mind the limitation inherent in the principle adopted, to which we have referred. He first brought the case before him within the principle, and then proceeded to adopt and apply the rule. Moreover, when the Chief Justice had occasion, in a subsequent

opinion dealing with another phase of the liquidation of the same bank (see 166 Tenn., 590, at page 596, 64 S. W. (2d), 186, 188), to refer to this rule, he was careful in applying the "presumption" to commingled funds, to say: "In our former decision, however, we adopted the rule of *Knatchbull* v. *Hallett,* L. R., 13 Ch. Div., 696. So here [as was a controlling factor in the former decision], the funds in the bank and coming into the hands of the receiver, at all times exceeding the amount collected," etc.

And what has been said applies alike to the second case, and perhaps even more pointedly. 166 Tenn., 581, 64 S. W. (2d), 22, 23. The writer of that opinion, in stating the facts, says: "The evidence shows that from the time the bank qualified as executor," etc., "up until it was placed in the hands of a receiver, it had cash on hand in excess of these three claims, as well as other claims which had been allowed as preferences." This, then, was the case presented. If the bank had and kept on hand cash to the extent stated, then clearly it had not withdrawn it from the blended fund into which it had been placed. To this situation the presumption requisite to the rule could logically apply; that is, that such withdrawals as had been made were of other than the trust funds.

But this is not all. The opinion proceeds to quote and adopt the language and reasoning of *Leach* v. *Farmers' Savings Bank,* 205 Iowa, 114, 213 N. W., 414, 416, 217 N. W., 437, 56 A. L. R., 801, in which it is stated that there had been no time since the bank took charge of the trust estate "when the actual cash assets of the bank were less than the amount shown to be in the hands of the administrator at the time the receiver took charge."

And the holding in the Iowa case, which was adopted and applied in the opinion by MR. JUSTICE McKINNEY, was thus expressed:

"In *Stilson* v. *First State Bank,* 152 Iowa, 724, 133 N. W., 354; *Whitcomb* v. *Carpenter,* 134 Iowa, 227, 111 N. W., 825, 10 L. R. A. (N. S.), 928; *Cable* v. *Iowa State Sav. Bank,* 197 Iowa, 393, 194 N. W., 957, 197 N. W., 434, 31 A. L. R., 748, this court laid down the rule that, where there is a common fund in which there is a trust fund and the bank continues to draw from said fund, it is presumed that they will draw their own fund and preserve the trust fund. This is also stated, in substance, in *Independent Dist.* v. *King,* 80 Iowa, 497, 45 N. W., 908, and seems to be the general rule elsewhere. The fact, therefore, that this money from this estate was mingled with the general fund of the bank, will not defeat the recovery of the trust fund so long as there was money enough in the bank to pay the trust fund, and it is the right of the *cestui que trust* to recover said fund from the receiver of the insolvent bank when he has shown these facts."

This limitation which, as shown, this court has not heretofore failed to regard, is recognized and enforced quite generally in those jurisdictions following the majority; that is, the *Knatchbull* v. *Hallett* rule. See, on this point, note in 82 A. L. R., 180 et seq. It results that the learned chancellor was in error in ordering preferential payment of these trust funds in full from the general assets of the bank.

█ We are, however, of opinion that it is consistent with the principle of the rule to extend preference to such net sum as was in the correspondent banks on the day the bank closed, available to the receiver and col-

lected in by him. It is true that there is some division among the authorities as to whether or not checking accounts of the bank in correspondent banks should be classed with cash actually in the banking house. Recurring to the reason of the rule and testing this issue by the governing principle, we think these deposits, constantly kept subject to check in another bank, may well be held subject to the presumption that these funds have never been withdrawn for use or application in any sense inconsistent with the purposes of the trusts. If a bank acting as trustee is to be held to have appropriated or made application of the trust funds left with it when it has done no more than make deposit of them subject to its check, then the same rule would apply to the individual trustee who keeps trust funds intrusted to him on deposit in a bank, and it would follow that the preferential rule under consideration could not apply to balances into the blended account of such individual. In other words, we think it reasonable to hold that a deposit and carrying of trust funds in a bank account, subject to check, does not preclude the application of the preferential rule to any balance on hand in such account upon insolvency.

Our Tennessee cases have not dealt directly with this point. However, we think this view consistent with our statutes which recognize demand deposits of a bank with its correspondents as a part of the required cash reserves of the bank. Code, section 6021, reads:

"6021. *Reserve of Cash and Demand Balances Due from Banks Shall Not Fall Below Ten Per Cent of Deposits.*—No bank, firm, person, or corporation doing a banking business shall reduce, or be allowed to reduce the cash of the bank on hand below ten per cent of de-

mand deposits; . . . provided, that said reserve may consist of the balance due by banks and bankers to said bank when payable on demand.''

There is no distinction taken in these statutes, or in practice, between funds in the till or in the vault, in the main bank or its branches, or its correspondent banking house, perhaps across the way, when computing its cash assets available for withdrawal in cash or sight exchange for instant use. Such funds are all alike unwithdrawn, undisposed of, unapplied, or appropriated to any use inconsistent with the trust, and balances in all these forms may alike be impressed upon insolvency with preference in favor of the trusts, the rule applying thereto that withdrawals which have been made were of ''the trustee's own funds, which he had a right to withdraw, and the balance will be presumed to include the beneficiaries' funds which the trustee had no right to use.''

We find nothing inconsistent with this view in the Bank of Bristol Cases hereinbefore discussed. For example, it will be observed that Chief Justice GREEN, in our leading case, employs the phrase ''cash reserve of this bank'' as the fund subject to be impressed with the preference. Now it is provided in our Code section above quoted that said ''reserve'' may consist, not only of cash, but of ''the balance due by banks and bankers to said bank when payable on demand.'' But, in thus applying the rule, it must be limited to such balances ''due by banks'' as are ''payable on demand,'' and will not include such portions of such balances as have been subject to counter or offsetting obligations of the insolvent to any such correspondent bank.

It is suggested that this is the "minority" rule. The learned annotator in 82 A. L. R., does not so express it. His language is: "According to the view adopted by some courts, the presumption as to the preservation of the trust fund does not extend to deposits in correspondent banks, in the absence of evidence tracing the trust fund into such deposits," etc. A number of sustaining decisions are reviewed. He then says: "Other courts hold that trust funds which have been commingled by the bank with its general funds may be followed, by virtue of the presumption in question, not only into the cash in the insolvent bank itself, but also into credits or deposits in its favor in other banks." At least an equal number of cases are referred to for this view.

The following from the opinion in *People* v. *Auburn State Bank,* 215 Ill. App., 133, seems to us to be clear and concise reasoning:

"Upon the premise that a fund once impressed with a trust remains unchanged regardless of the physical change in the moneys representing the fund, and applying the rule that whatever the trustee withdraws will be presumed to be his own money, and the balance remaining the trust fund, it would seem logically to lead to the conclusion that whatever amount the trustee has in his possession must constitute the trust fund, whether such sum may be in one place or another as to physical location. We fail to see how the mere fact that the bank had its moneys in different places could change the character of the trust fund. To confine the preference to the amount on credit with the First National Bank is to determine the identity of the trust fund by the identity of the money. This is contrary to the rule."

Judge PARKER, of the Fourth Circuit, thus tersely states our view, in his opinion in *Schumacher* v. *Harriett* (C. C. A.), 52 F. (2d), 817, 820, 82 A. L. R., 1: "There is as little reason for distinguishing between cash, cash items, and deposits in other banks in the application of the equitable doctrine, as there would be in distinguishing between moneys kept in different vaults of the same bank."

The chancellor allowed interest on the preferred claims from the appointment of the receiver. On the one hand, it is urged that no interest should be allowed, and on the other that interest should be computed from the date of "wrongful commingling." We are not disposed to disturb the discretion of the chancellor in this matter, usually left to his discretion.

The decree of the chancellor will be modified, as above indicated, and the cause remanded for further proceedings in accordance herewith.