BARRY *v.* HENSLEY *et al.*

STATE *ex rel.* HENSLEY *et al. v.* BOOTH *et al.*

(*Knoxville,* September Term, 1936.)

Opinion filed November 21, 1936.

Cox, TAYLOR & EPPS, of Johnson City, for appellants.

SWINGLE & HARDIN, of Greeneville, and DIVINE, GUINN & MITCHELL, of Johnson City, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The feature of these consolidated cases coming before us is an effort of the beneficiaries of a trust fund to follow that fund into the hands of the First State Bank of Erwin and, through that bank, now insolvent, into the hands of the superintendent of banks. The chancellor and the Court of Appeals both decreed in favor of the beneficiaries. Restrictions on the decree of the latter court, however, rendered it unsatisfactory to the beneficiaries and they, as well as the superintendent of banks, have filed petitions for *certiorari*. We granted both petitions.

William Jackson Jones, a World War soldier, was killed in action. His war risk insurance was paid in installments to his mother during her life. On her death, R. M. Barry qualified as Jones' administrator and on April 6, 1929, Barry received a government check for $5,600, the balance due on Jones' policy, payable to "R. M. Barry, administrator of the estate of William J. Jones."

Barry was president of the First State Bank of Erwin. He indorsed the $5,600 check as administrator and deposited it to his individual account in the bank. The greater part of this deposit was taken up by an overdraft of Barry's and the remainder was checked out for his personal use.

The First State Bank became insolvent and the superintendent of banks was appointed receiver May 2, 1930,

and proceeded with the liquidation of the business of that institution. Advertisement for creditors began May 2, 1930.

Several months later the Citizens Bank of Erwin was organized, largely by stockholders and depositors of the First State Bank. On April 20, 1931, the chancery court of Unicoi county approved a transaction whereby the Citizens Bank purchased from the receiver (in round numbers) $124,000 of notes and accounts receivable, belonging to the defunct bank. In consideration the new bank paid certain creditors of the old bank and the new bank issued its certificates of deposit to depositors of the old bank for 36 per cent of their balances. The new bank also contracted to take over as trustee the remaining assets of the old bank, the face value (in round numbers) of $200,000, and to collect and distribute the amount realized from such trust assets among the creditors of the old bank.

The distributees of William Jackson Jones did not set up their claim, as against the receiver of the old bank or as against the new bank, by any pleading in these cases until June 8, 1931. This was some weeks after the court had approved the transfer of assets to the new bank and, as we understand, after certificates of deposit for the 36 per cent. of their demands had been issued by the new bank to the depositors of the old bank.

It is insisted by the receiver that this claim of the Jones distributees is barred by provisions of our banking statute contained in sections 5981-5985 of the Code. These sections are as follows:

"5981. The superintendent shall cause notice, to be given by advertisement in such newspapers as he may direct weekly, once a week for six consecutive weeks, call-

ing on all persons who may have claims, but not including deposits shown by the books of the bank which shall *prima facie* be a proven claim, against the bank to present the same to the superintendent and make legal proof thereof, at a place and within a time to be specified in the notice, not less than ninety days from the day of the first publication of the notice.

"5982 The superintendent shall mail a similar notice to all persons whose names appear as creditors upon the books of the bank.

"5983 If the superintendent doubts the justice and validity of any claims or deposits, he may reject the same and serve notice of such rejection upon the claimant or depositor, either by mail or personally, and an affidavit of service of such notice, which shall be *prima facie* evidence thereof, shall be filed in the office of the superintendent.

"5984 An action upon a claim so rejected must be brought by the claimant within six months after such service, or the same shall be barred.

"5985 Claims presented and allowed after the expiration of the time fixed in the notice to the creditors shall be entitled to share in the distribution only to the extent of the assets in the hands of the superintendent at the time such claims are filed without allowance for previous distribution."

We do not think the Code provisions were intended to bar claims against an insolvent bank filed more than ninety days after the first advertisement required by section 5981, but that such belated claims, as stated in section 5985, "shall be entitled to share in the distribution only to the extent of the assets in the hands of the super-

intendent at the time such claims are filed without allowance for previous distribution.''

■ The issuance of these certificates of deposit by the new bank, pursuant to the arrangement with the receiver or the old bank, was in effect a distribution. There was no bad faith in the transaction. Neither the receiver nor those organizing the new bank had notice that this claim would be made against the receiver by the Jones distributees until June 8, 1931. Doubtless the receiver and others might have advised themselves of the liability of the old bank for this misappropriation, but up until June 8, 1931, the Jones distributees were pursuing the administrator and the sureties on his bond. Evidently the $124,-000 of bills receivable was sold to the new bank for a fair price, since the transfer was approved by the chancellor.

We accordingly think that the Court of Appeals was right in confining the Jones distributees for satisfaction of their claim to the $200,000 of undistributed assets turned over to the new bank as trustee. The record indicates that at least 10 cents or 15 cents on the dollar will be realized from this source.

In *State ex rel.* v. *Bank of Granville,* 17 Tenn. App., 512, 68 S. W. (2d), 969, relied on by the distributees, it does not appear that there had been any distribution prior to the suit on the belated claim which was allowed its pro rata of all assets.

It seems to us that it was entirely competent for the Legislature to enact section 5985 of the Code by way of promoting the speedy liquidation of insolvent banks.

■ That the First State Bank became liable along with Barry for the misappropriation of the proceeds of this government check admits of no doubt. The check being payable to ''R. M. Barry, administrator of the estate

of William J. Jones," the bank was charged with notice of the trust, and became liable, as cotrustee with Barry, when it permitted the deposit of this check to Barry's individual account and permitted him to dissipate the fund for his own purposes. *U. S. Fidelity & Guaranty Co.* v. *People's Bank*, 127 Tenn., 720, 157 S. W., 414, and authorities cited. Then too, in this particular case, the greater part of the proceeds of the check was applied to the bank's own benefit in satisfaction of Barry's overdraft.

▪ Again, Barry seems to have been the sole representative of the bank in accepting this deposit. If this be true, his knowledge was imputable to the bank. *Smith* v. *Mercantile Bank*, 132 Tenn., 147, 177 S. W., 72; *People's Bank* v. *True*, 144 Tenn., 171, 175, 231 S. W., 541.

▪ The First State Bank having become a trustee of this fund, the beneficiaries of the trust were entitled to follow the fund into the cash reserve or cash assets of the bank going into the hands of the receiver, with the qualification hereafter stated. *State ex rel.* v. *Bank of Bristol*, 165 Tenn., 461, 463, 55 S. W. (2d), 771; *State ex rel.* v. *Bank of Bristol*, 166 Tenn., 581, 64 S. W. (2d), 22; *State ex rel.* v. *Thomas W. Wrenne & Co.* (Tenn. Sup.), 92 S. W. (2d), 416, 419.

▪ The result is the same although the bank in this case became a trustee *ex maleficio* instead of an express trustee. It was so held, but without discussion, in *Freeman* v. *Citizens' National Bank*, 167 Tenn., 399, 410, 70 S. W. (2d), 25. While it is difficult to presume that one who has obtained property wrongfully or fraudulently will hold it intact for the owner and that withdrawal from a commingled fund will be presumed to be his own money, yet on the principles of estoppel such a trustee should not be permitted to say that he used the trust

money rather than his own, nor should those claiming under him be permitted to take advantage of the trustee's wrong. See *State v. Foster*, 5 Wyo., 199, 38 P., 926, 29 L. R. A., 226, 63 Am. St. Rep., 47; Note, 82 A. L. R., 159, 167; Professor Scott in 27 Harvard Law Review, 125-129.

The chancellor and the lower courts, however, have erred in the amount of the decree awarded to the Jones distributees. These courts decreed in favor of the distributees for the full amount of their claim on the theory that the cash in the first State Bank and the cash to its credit in its correspondent banks at all times exceeded the trust fund. The proof shows that the First State Bank, when the receiver took it over, had cash in its vaults amounting to $3,912.04 and that it had cash on deposit with correspondent banks amounting to $3,774.37. However, the insolvent bank was indebted to its correspondent banks and its deposits in those banks were applied on account of its debts to them. The insolvent bank, therefore, had only such free cash as was contained in its own vaults. We assume that this was the lowest amount to which the free cash was reduced after the deposit of the trust fund.

In *State ex rel. v. Thomas W. Wrenne & Co., supra*, it was decided that free cash on deposit in another bank could be reached by the beneficiary of a trust fund that had been commingled. The court, however, added:

"But, in thus applying the rule, it must be limited to such balances 'due by banks' as are 'payable on demand,' and will not include such portions of such balances as have been subjected to counter or offsetting obligations of the insolvent to any such correspondent bank."

It results that the Jones distributees may only have a decree for $3,912.04 and the decree of the Court of Appeals, thus modified, will be affirmed.