## In re FRANKLIN SAVINGS & LOAN CO.
### No. 11240.

District Court, E. D. Tennessee, S. D.
June 13, 1940.

Williams & Frierson, of Chattanooga, Tenn., for petitioner.

Wilkerson & Wilkerson, of Chattanooga, Tenn., for trustee.

DARR, District Judge.

This cause is before the court to review an order of the referee denying petitioner's claim for prior payment of $555.

The facts of the controversy are as stipulated, and these facts and the claim of the

petitioner are clearly stated in her petition to review, which are as follows:

"(1) The bankrupt had, in its possession, certain stock certificates, assigned in blank, belonging to petitioner under a written contract to hold them, 'for safe keeping', until they could be sold at specified prices. They were never sold but, without petitioner's knowledge or consent, the bankrupt pledged them as security for its note to a bank for $1,000. After the appointment of the receiver, petitioner learned of the transaction and, her stocks being worth much more than $1,000, paid the bank $1,000 and took up the note.

"(2) The bankrupt obtained $995 on the above note which was commingled with its own funds, on March 26, 1938, by being deposited in its general bank account.

"(3) Until March 29, this $995, which we will call trust funds, remained in the account, since the balance was never less than that amount. But withdrawals of $956.43 on that date reduced the balance to $521.35. Hence the total withdrawal consisted of $473.47 of trust funds and $482.96 of the bankrupt's own funds. The withdrawals were made by checks in such manner that it is impossible to tell the order in which the checks were actually paid.

"There were no deposits on the 30th and 31st. Hence all the money in the account was trust funds and the withdrawals were $227.19 and $183.25 respectively.

"(4) Out of the withdrawals on the 29th, loans were made as follows:

| | | |
|---|---|---|
| H. C. Hines | $325.00 | |
| J. C. Payne, Jr. | 40.00 | |
| W. H. Wilson | 10.00 | |
| Deitch | 90.00 | $465.00 |

"But the notes in which these amounts were invested included both new loans in the above amounts and also renewals of previous loans. So the notes taken were:

| | | |
|---|---|---|
| Hines | $424.12 | |
| Payne | 100.00 | |
| Wilson | 100.00 | |
| Deitch | 100.00 | $724.12 |

"(5) The $227.19 withdrawn on the 30th was all trust funds. Of this $90 went into the note of Mrs. Tansey Hill for $150 representing a new loan of $90 and the renewal of a former loan.

"(6) *Priorities claimed:*

| | | |
|---|---|---|
| Out of the proceeds of the Hines, Payne, Wilson and Deitch notes | $465.00 | |
| Out of the Hill note | 90.00 | $555.00 |

"(7) All five of the above notes were pledged, along with most of the bankrupt's other assets to a bank at Nashville to secure a large indebtedness. As collections were made they were, both before and after the appointment of the receiver, applied on this indebtedness. And the collections made on the above notes and so applied were:

"(a) On the first four *before bankruptcy:*

| | | |
|---|---|---|
| Hines | $47.00 | |
| Payne | 30.00 | |
| Wilson | 40.00 | |
| Deitch | 40.00 | $157.00 |

"*After bankruptcy:*

| | | | |
|---|---|---|---|
| Hines | $210.00 | | |
| Payne | 60.00 | | |
| Wilson | 60.00 | | |
| Deitch | 60.00 | 390.00 | $547.00 |

"(b) On the Hill note:

| | | |
|---|---|---|
| Before bankruptcy | $37.00 | |
| After bankruptcy | 42.50 | 79.50 |

"(8) It turned out that when the indebtedness to the Nashville bank was paid off, there remained in its hands collateral of a value largely in excess of the collections on the above notes and this was released to the trustee. Three of the above notes had been paid in full but the Hines note with an unpaid balance of $162.50, and the Hill note with an unpaid balance of $70.50, were included in the released collateral. And, at the time of the hearing by the referee, the trustee had collected $45 on the Hines note and $70.50 on the Hill note."

█ From the above it is evident, and not controverted, that the money obtained from the loan made on the security of the petitioner's stock certificates was a trust fund in the hands of the Franklin Savings and Loan Company.

664

■ In an insolvency proceedings it is well settled that a trust fund is a prior claim if identified or that the trust fund may be followed through any change in form or species. Hawthorne v. Brown, Tenn., 3 Sneed 462; Moffitt v. McDonald, Tenn., 11 Humph. 457; Turner v. Petigrew, Tenn., 6 Humph. 438; McDowell v. McDowell, 144 Tenn. 452, 456, 234 S.W. 319, 18 A.L.R. 623; State ex rel. v. Bank of Bristol, 165 Tenn. 461, 55 S.W.2d 771; State ex rel. v. Bank of Bristol, 166 Tenn. 581, 64 S.W.2d 22; State ex rel. v. Thomas W. Wrenne & Co., 170 Tenn. 131, 92 S.W. 2d 416.

■ A trust fund held by a bank and commingled with its general funds which did not fall below the amount of the trust fund, upon insolvency of a bank, the trust fund was a preferred claim against the general fund. State ex rel. v. Bank of Bristol, two cases supra; State ex rel. v. Thomas W. Wrenne, supra.

It would follow, under such condition, that if the amount of the general fund fell below the total of the trust fund, the whole amount so remaining would be preferred as a part of the trust fund.

On the propositions of law announced in the last paragraph, counsel for both parties seemed to have agreed. The disagreement arises on the effort to follow the trust fund further than cash held by the bankrupt. There is further disagreement as to the right to follow the trust into notes bought by the bankrupt with the part of the trust fund and pledged for a loan with the bank at Nashville.

■ The whole idea of a preference of a trust fund is based upon a fair and reasonable identification thereof so as not to harm other creditors. If a debtor has funds belonging to someone else, other creditors can not be harmed if that fund is identified and paid to the person to whom it belongs.

I fail to see any difference in principal, and upon authorities above cited, in identifying the trust fund in money or in property bought with the trust fund money. If it were true that the trust fund could only be identified in money, then a trustee could be benefited by his own wrong doing and other creditors given an unfair advantage.

■ My judgment is that when the amount of the general deposit of the bankrupt fell below the amount of the trust fund, then this deposit began, in effect the trust fund, and when invested in notes belonging to the bank, the notes were impressed with this trust.

■ It is insisted by the trustee, and so held by the referee, that these notes did not come into the hands of the trustee. If the notes had been a part of the general fund of the estate, the mere fact that they were pledged would not have precluded the trustee from receiving them, subject to the lien of the pledgee. Remington on Bankruptcy, Section 4297; American National Bank of Sapulpa v. Harris, 10 Cir., 84 F.2d 181; Comer v. John Hancock Mut. Life Ins. Co., 8 Cir., 80 F.2d 413; State Trust & Savings Bank v. Dunn, 5 Cir., 24 F.2d 477, certiorari granted 277 U.S. 581, 48 S.Ct. 561, 72 L.Ed. 998, and reversed on jurisdictional grounds 278 U. S. 582, 49 S.Ct. 184, 73 L.Ed. 518; In re Glenn, D.C.S.C., 2 F.Supp. 579; Barringer v. Lilley, 9 Cir., 96 F.2d 607.

■ But I think it is true that the notes in so far as they represented this trust fund did not come into the hands of the referee or trustee because they were no part of the bankrupt's estate. The trustee in bankruptcy is not entitled to property in possession of the bankrupt which is held under an implied trust, or to which a constructive trust attaches. In re Steele-Smith Dry Goods Co., D.C.Ala., 298 F. 812; In re Brainard Hotel Co., 2 Cir., 75 F.2d 481; In re Gubelman, 2 Cir., 10 F.2d 926, certiorari granted Borland v. Latzko, 271 U.S. 654, 46 S.Ct. 484, 70 L.Ed 1134, and Latzko v. Borland, 271 U.S. 654, 46 S.Ct. 484, 70 L.Ed. 1134, and modified on other grounds Latzko v. Equitable Trust Co. of New York, 275 U.S. 254, 48 S.Ct. 60, 72 L.Ed. 267.

■ The original petition in this case sought to have the entire indebtedness due petitioner declared a prior claim. The trustee has resisted these efforts, making the contention that there is no identified trust funds.

For these reasons, I think the filing of the original petition was a proper procedure and amounted to the beginning of a suit to marshal assets although not particularly asked for in the prayer of the petition. I think the petitioner would be entitled to have the whole fund or any part of the fund declared a prior claim upon any rule of law that might arise.

The right to marshal assets depends upon the existence of the necessary conditions at the time it is invoked. It can only become a fixed right by taking proper steps to have it enforced and is, therefore, subject to defeat at any time before it is attempted to be enforced. 38 C.J., page 1370; Gilliam v. McCormack, 85 Tenn. 597, 4 S.W. 521.

This being true, the time to ascertain whether trust funds could be identified so far as marshaling assets is concerned would be the time of the filing of the original petition, January 9, 1939.

There would no lien fixed for the trustee, even though bankruptcy were before the filing of the petition to marshal the assets, for the reason that the trust property was no part of the bankrupt's estate.

While it is true that the trust property is no part of the bankrupt's estate to come to the trustee, yet the notes were an asset of the bankrupt in so far as the transaction with the bank at Nashville is concerned. This is true under the well known rules pertaining to negotiable instruments.

Thus, the petitioner would have the right to apply the doctrine of marshaling assets to the situation at the Nashville bank; but would only be entitled to marshal the assets as of January 9, 1939, for reasons heretofore stated.

Any money that may have been collected on the notes and applied to the indebtedness at the bank at Nashville before the filing of the petition would pass that much of the trust fund to an innocent party and be beyond reclamation by petitioner. The right to follow the trust fund by marshaling the assets set up when the petition was filed.

It is my view that this trust is impressed upon these notes in such amount as they may appear to be worth as of January 9, 1939. Such amount paid on the notes and credited on the indebtedness to the Nashville bank after January 9, 1939, is a lien on the remaining notes pledged to the bankrupt and returned to the trustee after the full payment of the Nashville bank's indebtedness. I assume the record will disclose what these amounts are, but if not, the case will be referred for proof as to these matters.

In addition, the trust will be impressed upon the remaining value of such notes that were bought with trust fund money as may have come back to the trustee after the payment of the loan to the Nashville bank.

Let an order be prepared according to this opinion.